[No. 29035-5-I.    Division One.    February 1, 1993.]

MCMAHAN & BAKER, INC., *Appellant,* v. CONTINENTAL
CASUALTY COMPANY (CNA), *Respondent.*

574

*Russel J. Hermes, John P. Watts,* and *Riach, Gese, Seather & Watts,* for appellant.

*Jeffrey P. Downer* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

BAKER, J. — McMahan & Baker, Inc., a structural engineering firm, appeals the trial court's grant of summary judgment to Continental Casualty Company (Continental) in this coverage determination action. McMahan & Baker contends that the actions taken by its employee in performing a structural damage appraisal did not fall within a policy exclusion for claims arising out of the providing of cost estimates. We hold that the exclusion is ambiguous and therefore construe it in favor of the insured, McMahan & Baker. Thus, we reverse and remand for trial.

## I
### THE FRINDRICH CLAIM

A vehicle traveling at a high rate of speed struck a residence owned by Karl and Nadine Frindrich. Frindriches submitted a claim to their homeowners' insurer for damages, but were unable to agree with their insurer on a damage figure. Frindriches invoked the appraisal provision of their policy, under which each party appoints an appraiser. The

Frindriches appointed Edwin Baker, a principal in McMahan & Baker, Inc.

Frindriches' attorney states by affidavit that Baker was appointed to assess the structural impact the vehicle collision had upon the house prior to providing damage estimates. "This primary structural impact determination was crucial to determining the validity of my clients' claims. Thus, it was for this reason, and this reason alone, that I hired Mr. Baker rather than simply a general contractor." Baker was accompanied on one of his site visits by a general contractor who assisted him in calculating repair costs. The attorney further stated that it was "contrary to my purpose for hiring Mr. Baker, and contrary to my understanding of the work that he actually performed, to conclude that he was only performing cost estimates."

At the time Baker was hired, Frindriches' attorney wrote a letter enclosing an itemized list of damages for which the Frindriches required "an estimate of repair". The letter went on to request "cost to repair on these items" and suggested that if Baker had concerns about causation that the items be priced out anyway. The attorney requested that Baker bring a plumb bob to the site so he could see how the building was skewed.

Baker undertook to perform the damage appraisal. In his report, he determined whether each item of damage was related to the impact. He concluded that $2,200 would be an appropriate cost of repair for the causally related damages.

The Frindriches disagreed with Baker's appraisal. They later brought an action against him, McMahan & Baker, Inc., another investigator, and their homeowners' carrier. The complaint alleged that Baker "agreed to act as appraiser". It stated a cause of action for negligence against Baker and McMahan & Baker, Inc., alleging "they did not seek their own estimate of the damage, and that they completely failed to adequately investigate and prepare for the appraisal process." The Frindriches further alleged that Baker "should

have known the award was inadequate based on [a prior engineering report] which Baker . . . reviewed."

Baker stated in an affidavit that he had been hired to act as an independent appraiser, and was directed to formulate "a damage repair estimate".

Frindrich, who happens to be a structural engineer specializing in shock, stress, and the vibration of various structures, stated in an affidavit that Baker "lacked the expertise necessary to recognize the damages and properly calculate the loss". He further stated that Baker had ignored his repeated requests to conduct a "scientific and dynamic analysis" on the home. He argued that Baker should have performed various impact and displacement calculations and that his appraisal was based on a mistaken methodology and analysis. He further argued that Baker was professionally negligent in relying on a prior engineering report with which Frindrich disagreed, especially after Frindrich had indicated repeatedly to Baker what Frindrich believed to be the true nature of the damages.

In answering interrogatories, Frindrich alleged negligence by Baker as a result of failing to perform or inadequately performing the following tasks:

a. energy audit (calculations — source and magnitude of resulting impact energy);

b. engineering calculations (structural response to impact);

c. visual inspection of damage;

d. damage audit (compile and compare analytical and visual inspection results);

e. determine magnitude of visual and hidden damage (potential);

f. furnish (or communicate) progress report to the owners;

g. if approved, use the findings in negotiations.

Frindrich further stated that as a professional engineer, Baker should have known that the impact of the car was "akin to a seismic shock" and that due to the nature of the event, the true extent of damages would not be apparent for some time.

The Frindriches' expert submitted an affidavit stating that the impact would have caused "tortional movement" in

the building, and that Baker's failure to complete certain impact and displacement calculations and a dynamic analysis was negligence. Another expert for Frindrich stated that in his opinion "extensive modal and impact analysis" must be performed in order to determine the exact severity of the structural damage.

### THE COVERAGE CLAIM

In the instant action, McMahan & Baker sought a declaratory judgment that Continental was obligated to defend it and provide coverage for any liability incurred on the Frindrich claim.

The errors and omissions policy at issue contains the following exclusion:

II. EXCLUSIONS.
We will not defend or pay under this policy for:
A. "claim" and "claim expenses" arising out of:
1. "your":
. . . .
e. providing of or revising estimates or statements of probable construction costs or cost estimates, or failing to do so[.]

An engineer who had been involved in the examination of the Frindrich home stated in an affidavit submitted on behalf of McMahan & Baker that the validity of the damages the Frindriches alleged would require an engineering determination. He further stated that this assessment would involve "a primary determination of the nature and extent of the damages sustained. . . . Only after the primary determination was completed could the next determination be made as to the dollar values of the damages." Thus, it was his opinion that Baker's task was one of structural engineering, rather than simply cost estimating.

Based on the exclusion, the trial court granted summary judgment in favor of Continental.

## II

There is no factual dispute here; both parties contend their interpretation of the contract is correct as a matter of law.

COVERAGE

██ Insurance policies are to be construed as contracts, and their interpretation is a matter of law. The court must enforce the contract as written if the language is clear and unambiguous. *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1*, 112 Wn.2d 1, 10-11, 771 P.2d 701 (1989). However, if the language on the face of an insurance contract is fairly susceptible to two different but reasonable interpretations, the contract is ambiguous, and a reviewing court must attempt to discern and enforce the contract as the parties intended. *PUD 1*, 112 Wn.2d at 10-11. In the event of ambiguity in exclusionary language, the effect of such language will be construed against the drafter. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992).

██ The policy should be given a practical and reasonable interpretation that fulfills the intent of the parties, that is, a construction such as would be given by the average person purchasing insurance. *Stanley v. Safeco Ins. Co.*, 109 Wn.2d 738, 740-41, 747 P.2d 1091 (1988). The contract should not be given a strained or forced construction that would lead to absurd results. *Eurick v. PEMCO Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987).

██ We decline Continental's invitation to hold that any engineering appraisal work is not covered by reason of the exclusion. Such a construction would be inconsistent with the rule that exclusionary clauses must be construed narrowly. *See Eurick*, 108 Wn.2d at 340.

██ McMahan & Baker relies on *Comstock Ins. Co. v. Thomas A. Hanson & Assocs., Inc.*, 77 Md. App. 431, 550 A.2d 731 (1988).[1] In that case, a similar but not identical exclusion clause in an architect's errors and omissions policy was construed. The court held that to apply the cost estimating exclusion in every case where costs exceeded the estimates would result in the exclusion swallowing the policy.

---

[1] Continental's assertion that McMahan & Baker's citation to this case amounts to a new theory on appeal is meritless. McMahan & Baker argued precisely the same theories below. Nothing precludes a party on appeal from adding support by way of additional authority.

For example, quite frequently negligent designs will result in cost overruns. Thus, the court held it was more appropriate to examine the "nature and cause" of the cost overrun in applying the exclusion, and apply it in circumstances where the overrun either resulted from events beyond the architect's control, in which case there would be no liability in any case, or where the architect or engineer made mistakes in preparing the estimate itself. *Comstock*, at 446-48.

A similar analysis is appropriate here.[2] The gravamen of Frindriches' complaint against McMahan & Baker was not that the engineer had made an estimating error in preparing or calculating the cost estimate, for example by specifying improper materials or an improper quantity of materials, or by improperly determining component costs. Rather, the Frindriches alleged negligence in failing to apply appropriate engineering methodologies and analyses to determine the true extent of the damage. The claim was in essence one alleging negligence in basic engineering work, precisely what the policy was designed to cover.

Continental relies heavily on the phrase "arising out of " in the exclusion. It argues that in Washington law the phrase "arising out of " is not ambiguous and means "originating from" or "flowing from". *See Everett v. American Empire Surplus Lines Ins. Co.*, 64 Wn. App. 83, 89, 823 P.2d 1112 (1991); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986). We agree that the term "arising out of " is not ambiguous in this context. However, the facts of this case do not indicate that Frindriches' claim arose out of, that is, originated or flowed from Baker's providing cost estimates. Rather, the claim arose from Baker's alleged omissions in failing to pursue certain engineering analyses.

Interpretation of an engineer's errors and omissions policy should not turn on the particular phrase selected to describe the task. Continental Casualty Company argues, in effect,

---

[2]The *Comstock* court held the exclusion as written would not apply to a claim based on a defect in design or basic engineering work. *Comstock*, at 446-48. Our analysis differs slightly in that we hold the clause is ambiguous as written and therefore must be applied in favor of coverage in this case.

that if a client asked an engineer to do a cost estimate, which may require some underlying engineering calculations, the exclusion would apply, whereas if the client requested structural engineering work including cost estimates, the exclusion would not apply. We can make no rational and clear distinction between the two, and find the clause ambiguous in that regard. Thus, we construe it in favor of the insured.

■ The duty of an insurer to defend an action brought against its insured arises when the complaint alleges facts which could, if proven, impose liability upon the insured within the policy's coverage. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 908, 726 P.2d 439 (1986). The complaint must be liberally construed and the insurer must defend if the claim is potentially within the policy's coverage. *Bosley v. American Motorists Ins. Co.*, 66 Wn. App. 698, 701, 832 P.2d 1348 (1992). An insurance company is required to look beyond the allegations of the complaint and reasonably investigate when the allegations are in conflict with facts known to or readily ascertainable by the insurer, or if the allegations of the complaint were ambiguous or inadequate. *Bosley,* 66 Wn. App. at 701-02.

Because the complaint alleged that Baker had "failed to adequately investigate and prepare for the appraisal process", Continental had a duty to defend. Even if such allegations are ambiguous or inadequate, the record contains other material indicating that the true nature of the complaint went to the heart of Baker's engineering analysis. Thus, Continental had a duty to defend.

### Fees

McMahan & Baker argues it is entitled to attorney fees on appeal based on *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). The fee award in that case was based in part on a supplementary payment clause which provided that the insurer would pay the reasonable expenses incurred by the insured at the insurer's request. The policy at issue contains no such clause.

■ We do not construe the language in *Olympic Steamship* to allow attorney fees in the absence of a supplementary payment clause. Other cases following *Olympic Steamship* have relied upon such clauses. *See, e.g., Brown v. State Farm Fire & Cas. Co.*, 66 Wn. App. 273, 280-83, 831 P.2d 1122 (1992) (fees awarded under similar duty to reimburse clause); *Public Employees Mut. Ins. Co. v. Fitzgerald*, 65 Wn. App. 307, 318-19, 828 P.2d 63 (1992) (insurer must pay guardian ad litem expenses under a duty to reimburse/supplementary payment clause). Thus, McMahan & Baker is entitled to recover only its costs and statutory attorney fees.

Reversed and remanded for trial on the issue of damages.

WEBSTER, C.J., and GROSSE, J., concur.