[No. 35941-0-I.    Division One.    August 19, 1996.]

HEIDI SUE COOK, ET AL., *Appellants*, v. JEROME EVANSON, ET AL., *Defendants*, AMERICAN STATES INSURANCE COMPANY, *Respondent*.

*Breean L. Beggs* and *Brett & Daugert*, for appellants.

*Mary R. DeYoung, Peter M. Fabish,* and *Reed McClure,* for respondent.

WEBSTER, J. — Appellants Heidi Cook and Marilyn Keeton sustained respiratory injuries from exposure to fumes from a concrete sealant negligently applied by Adnil Design Contractor (Adnil). At issue is whether a pollution exclusion clause in Adnil's commercial liability policy precludes coverage for the injuries. Because the exclusion clause unambiguously covers the injuries, we affirm the summary judgment order in favor of Adnil's insurer, American States Insurance Company.

## FACTS

Adnil contracted to pressure wash and apply a sealant known as White Roc 10 to the exterior of the building where appellants worked. The contractors did not seal off a six-by eight-foot fresh air intake, which drew air into the building's HVAC system. White Roc 10 fumes entered the building, requiring evacuation. The appellants suffered serious respiratory damage when the fumes entered their workspaces.

The Material Safety Data Sheet describes White Roc 10 as a "[r]espiratory irritant." The manufacturer's information also warns that the product may cause respiratory irritation, among other problems, and that the vapor should not be inhaled. Use of the product requires adequate ventilation and equipment, including an approved organic vapor respirator. Adnil's employees covered their faces with Vaseline and wore coveralls, gloves, hats, boots, and respirators while using the product.

Adnil had a commercial general liability policy through

American States. Jerome Evanson, Adnil's vice president, did not read the policy or inquire whether it would cover specific types of injuries. In a deposition, he indicated that his goal was to obtain the least expensive coverage that would satisfy the state's licensing requirements.

The appellants sued Adnil's owners, Jerome and Linda Evanson, for damages sustained when Adnil "negligently allowed toxic vapors from the White Roc 10 [to] enter the HVAC system." They obtained default judgments totaling $392,725.06 when the Evansons failed to appear. They then commenced an action against American States to collect on the judgment. The appellants and American States both moved for summary judgment on the single question of whether a pollution exclusion clause in Adnil's liability policy precluded coverage. The trial court determined that the injuries fell within the exclusion and granted American States's motion for summary judgment.

## DISCUSSION

### Pollution Exclusion Clause

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review summary judgment orders de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

■■ The interpretation of insurance policies is a question of law. *American Star Ins. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993). When the language is clear and unambiguous, we must enforce the contract as written. *McMahan & Baker, Inc. v. Continental Casualty*, 68 Wn. App. 573, 578, 843 P.2d 1133 (1993). A policy is ambiguous if the language, on its face, is fairly susceptible to two different reasonable interpretations. *Greer v. Northwestern Nat'l Ins.*, 109 Wn.2d 191, 200, 743 P.2d 1244 (1987).

■ We interpret insurance policies as the average person would and give undefined terms their plain,

ordinary, and popular meaning. *Queen City Farms v. Central Nat'l Ins.*, 126 Wn.2d 50, 77, 882 P.2d 703 (1994). We also give policies a practical and reasonable interpretation, not one that would lead to absurd results. *McMahan & Baker*, 68 Wn. App. at 578. In doing so, it is appropriate to consider that the average purchaser of a comprehensive general liability policy would expect broad coverage for liability arising from business operations. *See Queen City*, 126 Wn.2d at 78. An insurer may limit its liability so long as it does so with clear language. *Teague Motor v. Federated Serv. Ins.*, 73 Wn. App. 479, 484, 869 P.2d 1130 (1994). Accordingly, we construe exclusionary clauses narrowly. *McMahan & Baker*, 68 Wn. App. at 578.

Applying these rules of construction, the question here is whether an average person would understand that the pollution exclusion clause unambiguously denied coverage for the appellants' injuries. *See American Star*, 121 Wn.2d at 875. Adnil's policy excludes coverage for injuries arising out of the discharge, dispersal, or release of "pollutants":

2. Exclusions

    This insurance does not apply to:

    . . . .

    f. (1)  *"Bodily injury"* or "property damage" arising out of actual, alleged or threatened *discharge, dispersal, release* or escape of *pollutants*:

    . . . .

    (d)  At or from *any site or location on which you* or any contractors or subcontractors working directly or indirectly on your behalf *are performing operations:*

    (i)  if the pollutants are brought on or to the site or location in connection with such operations[.] (emphasis added).

The policy defines "pollutants" as "any solid, liquid, *gaseous* or thermal *irritant or contaminant, including*

smoke, *vapor*, soot, *fumes*, acids, alkalis, *chemicals* and waste." (emphasis added). This language is not ambiguous on its face as there are not two reasonable interpretations. White Roc 10's product literature describes it as an irritant and a vapor. Appellants themselves alleged that "toxic vapors" caused their injuries. White Roc 10 meets the definition of a "pollutant" and the appellants' injuries fall squarely within the pollution exclusion clause.

■ The appellants contend that this interpretation leads to an absurd result because it precludes coverage for routine workplace torts and that the policy language is ambiguous when applied to traditional tort situations. But they do not identify an ambiguity in the policy's plain language. They suggest that we interpret the clause to apply to traditional environmental pollution but not to injuries arising from business operations. This might be a reasonable interpretation if the policy simply precluded coverage for "pollution." Here, however, it specifically defines "pollutants." The exclusion makes no exception for pollutants used in the insured's business operations. Nor does the exclusion limit its application to classic environmental pollution. In fact, the exclusion specifically applies to injuries at the insured's work site if the injuring pollutants are at the site in connection with the insured's operations. It is difficult to imagine why an insured would take pollutants to a work site if it did not use them in its business operations. Moreover, a reasonable person would recognize that a chemical product requiring protective gear and proper ventilation could be a pollutant under the policy definition. Absent an ambiguity, we cannot impose limitations on the policy language.

Courts in other jurisdictions have reached the same conclusion when applying similar clauses to injuries resulting from an insured's business operations. *See, e.g.,* *American States Ins. Co. v. Nethery*, 79 F.3d 473 (5th Cir. 1996) (pollution exclusion clause precludes claim that fumes from paint and glue inflamed claimant's hypersensitivity to chemicals); *Brown v. American Motorists Ins.,*

930 F. Supp. 207 (E.D. Pa. 1996), *aff'd*, 111 F3d. 125 (3d Cir. 1997) (fumes from chemical waterproofing sealant applied to exterior of plaintiff's home fall within pollution exclusion clause); *Bernhardt v. Hartford Fire Ins. Co.*, 102 Md. App. 45, 648 A.2d 1047 (1994) (rejecting insured landlord's argument that tenant's carbon monoxide poisoning was covered because it was the kind of accident generally covered by a comprehensive liability policy rather than industrial pollution of the environment), *cert. granted*, 337 Md. 641, 655 A.2d 400 (1995); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 451 Pa. Super. 136, 678 A.2d 802 (1996) (fumes from commonly used sealant fell within definition of pollutant in pollution exclusion clause), *appeal granted in part*, 690 A.2d 711 (Pa. 1997).

■ The appellants rely on cases from other jurisdictions in which courts found that the pollution exclusion clause did not apply to routine workplace torts. In *Island Associates, Inc. v. Eric Group, Inc.*, the court found the same clause ambiguous when applied to an injury from cleaning compound fumes confined to a small area within the worksite. 894 F. Supp. 200, 203 (W.D. Pa. 1995). The court found that the fumes fell within a broad reading of the "pollutant" definition, but invoked a "common sense approach." It determined that a reasonable policyholder would not characterize routine accidents in the course of the insured's business as pollution. *Id.* at 203. The court, however, applied Pennsylvania's reasonable expectation doctrine: when the insurer creates a reasonable expectation of coverage that is *not* supported by the policy's terms, the expectation will prevail *over the policy language. Id.* at 202. Washington has never adopted the reasonable expectation policy. *Findlay v. United Pac. Ins.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996). Rather, we consider how a reasonable person would interpret the policy's language, but do not allow an insured's expectations to override the plain language of the contract. *See Queen City*, 125 Wn.2d at 78.

■ The *Island Associates* court also determined that

the terms "irritant" and "contaminant," viewed in isolation, are boundless, because all substances would irritate or damage some person or property. Without a limiting principle, the court feared the clause would extend beyond its intended scope, resulting in absurd results. As an example, the court suggested that the clause would preclude coverage for injuries sustained when a person slips and falls on the spilled contents of a bottle of Drano. *Id.* at 203 (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins.*, 976 F.2d 1037, 1043 (7th Cir. 1992)). Because the injuries in this case fall within the plain language of the pollution exclusion clause, we decline to find an ambiguity based on the clause's application to hypothetical cases.

The appellants also cite *West American Insurance v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991). In that case, fumes damaged chicken stored in the warehouse where Tufco was installing floors. Without identifying a specific ambiguity, the court stated that a reasonable person in Tufco's position would have understood that it had coverage for claims arising in its central activity. *Id.* at 321. Ignoring the policy's definition of pollutants, the court stated that Tufco understood pollutants to mean "unwanted impurity." *Id.* at 322. In this case, we will not similarly ignore the policy's unambiguous language.

Appellants contend that the drafting history of the pollution exclusion clause, discussed in opinions from other jurisdictions, supports limiting the clause to environmental pollution cases. A party can present drafting history to assist in determining a reasonable construction *after* the court finds a clause ambiguous. *Queen City*, 126 Wn.2d at 87. We cannot use the drafting history to find the clause ambiguous, however.

Appellants contend for the first time on appeal that the pollution exclusion clause violates public policy because it is in derogation of the contractor's statutory financial responsibility requirements. Matters not raised

in the trial court are not considered on appeal. RAP 9.12; *see also Nelson v. McGoldrick*, 127 Wn.2d 124, 140, 896 P.2d 1258 (1995).

Because the appellants' injuries fall within the pollution exclusion clause, they are not entitled to recover from American States and we affirm the summary judgment order.

## Attorney Fees

A party may recover attorney fees and costs on appeal only when granted by applicable law. *See* RAP 18.1(a). American States requests attorney fees pursuant to RCW 6.27.230. That statute provides fees to the prevailing party when an answer to a writ of garnishment is controverted. *Caplan v. Sullivan*, 37 Wn. App. 289, 294-95, 679 P.2d 949 (1984). Because the record contains no documentation of the filing of a garnishment action, we can only speculate that this action arose in contravention of a garnishment answer.[1] Thus, we do not award fees because American States has not demonstrated that an applicable law entitles it to a recovery.

We affirm.

KENNEDY, A.C.J., and ELLINGTON, J., concur.

Review denied at 131 Wn.2d 1016 (1997).

---

[1]Presumably, appellants applied for a writ of garnishment against American States (the garnishee) for the funds owed to them by Adnil under the judgment. *See* RCW 6.27.060. American States likely submitted an answer stating that it owed no compensation to Adnil that appellants could garnish. *See* RCW 6.27.190. Then, appellants presumably filed an affidavit controverting American States's answer, presenting the legal question at issue here as to whether the pollution exclusion clause precludes coverage.