76 P.3d 773 (2003)
The QUADRANT CORPORATION, a Washington corporation; Equity Residential Properties Trust, a Maryland corporation; and Roy Street Associates, a Washington general partnership, Appellants,
v.
AMERICAN STATES INSURANCE COMPANY, a foreign corporation, and State Farm Fire and Casualty Company, a foreign corporation, Respondents.
No. 50647-1-I.
Court of Appeals of Washington, Division 1.
September 22, 2003.
Dan'L W. Bridges, Bellevue, WA, for Appellants.
Mary R. DeYoung, Seattle, WA, for Respondents.
AGID, J.
In this insurance coverage case, The Quadrant Corporation, Equity Residential Properties Trust, and Roy Street Associates (collectively Insureds) appeal from summary judgment dismissal of their complaint against American States Insurance Co. and State Farm Fire and Casualty Co. (collectively Insurers). The Insureds sought coverage for injuries suffered by a tenant when fumes from a liquid waterproofing material used by a company they hired entered the tenant's unit and caused personal injury and property damage. At issue is whether the policies' pollution exclusions preclude coverage. Because the underlying injury and cause of action are the result of a pollutant acting as a pollutant, as opposed to a claim that is rooted in negligence, the exclusions apply. We therefore affirm.

FACTS
The relevant facts are not in disputethe parties stipulated to them. The underlying claim involves allegations by Delores Kaczor, a tenant in an apartment building owned by the Insureds. Kaczor suffered personal injuries *774 and property damage by exposure to toxic fumes emitted by a liquid waterproofing sealant applied by a contractor, Pacific Restoration and Waterproofing Inc., which was doing repair work on the building. The fumes entered Kaczor's unit as the waterproofing material dried.
The underlying claim was brought in two separate but related liability lawsuits against the Insureds. Both suits involved claims by or on behalf of Kaczor alleging the Insureds, through their contractor, were negligent in applying the weatherproofing solution and in failing to warn the tenant of its danger.
The Insurers denied coverage for the claim. In April 2002, the parties filed cross-motions for summary judgment. The cross-motions raised a single issue: whether coverage was precluded by the policies' pollution exclusions. The trial court granted summary judgment in favor of the Insurers, ruling that the policies did not cover the loss because the pollution exclusions precluded coverage.
There are two insurance policies at issue. Both are comprehensive general liability policies that contain essentially the same language. They exclude damage caused by pollutants. The American States policy provides in relevant part:
This insurance does not apply to:
. . . .
f. Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants[.][1]
For purposes of this exclusion, the policy contains the following definition:
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
The State Farm policy exclusion provides in relevant part:
Under Coverage L, this insurance does not apply:
. . . .
6. to any:
(a) bodily injury, property damage, personal injury or advertising injury arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, spill, release or escape of pollutants[.][2]
For purposes of this exclusion, the policy defines pollution as:
[P]ollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed[.][3]
The Insureds assert the exclusions do not apply to these facts.

DISCUSSION
The trial court dismissed the Insureds' claim against the Insurers under CR 56(c). Summary judgment is proper when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[4] This court conducts the same inquiry as the trial court in reviewing a summary judgment order.[5] We review summary judgment orders de novo,[6] and view all evidence in the light most favorable to the nonmoving party.[7]
Interpretation of an insurance policy is a question of law, and summary judgment is appropriate if the contract has only one reasonable meaning when viewed in light of the parties' objective manifestations.[8] Insurance *775 policies are to be construed as a whole, with force and effect given to each clause.[9] "Overall, a policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective."[10]

I. Pollution Exclusions
The issue is whether the insurance policies exclude coverage for claims arising from the waterproofing material's fumes; that is, do the fumes constitute "pollutants," as defined by the policies. Both insurance contracts contain pollution exclusions, and the Insurers relied on those exclusions to deny coverage for claims related to the tenant's injuries. The Insurers contend the fumes from the waterproofing material constitute pollution plainly excluded from coverage.
The Insureds cite Kent Farms, Inc. v. Zurich Insurance Co.[11] in support of their position that the pollution exclusions do not preclude coverage. There, the Washington Supreme Court held that a pollution exclusion did not preclude coverage in a case where a man suffered injuries after being struck by a forceful release of diesel fuel from a tank. The fuel delivery driver delivered diesel fuel to Kent Farms. After filling the farm's fuel storage tanks, he closed the tank's intake valve and started to remove the delivery hose. Because of a faulty intake valve, fuel back-flowed over him. Based on these facts, the court said that the damages resulted not from environmental damage, even though diesel fuel could constitute a pollutant in other situations, but rather from tortious personal injury caused by the faulty intake valve, i.e., the insured's negligence. The Kent Farms court reasoned:
[The injured person] was not polluted by diesel fuel. It struck him; it engulfed him; it choked him. It did not pollute him. Most importantly, the fuel was not acting as a "pollutant" when it struck him any more than it would have been acting as a "pollutant" if it had been in a barrel that rolled over him, or if it had been lying quietly on the steps waiting to trip him....[12]
The court therefore held that pollution exclusions in insurance contracts do not preclude coverage for all occurrences just because a potential pollutant is in the causal chain.
The Insurers rely primarily on Cook v. Evanson.[13] There, we held that an insurance policy's pollution exclusion precluded coverage for damage claims arising from fumes produced by negligent application of a concrete sealant. The sealant was supposed to be applied only to the exterior of the building. The contractors failed to properly seal off the building, and several workers inside became ill from breathing the fumes. We stated that although the fumes were not "traditional environmental pollution," they emanated from the insured party's work site and were connected to the business operations.[14]
While the Insureds assert that Kent Farms implicitly overruled Cook and the so-called "fumes" line of cases, the Insurers assert Cook is still good law because the two cases are distinguishable. The Insurers are correct.[15] In City of Spokane v. United National Insurance Co.,[16] the district court for the Eastern District of Washington addressed the same issue. It stated:
Although Plaintiff argues that the Kent Farms case implicitly overruled prior cases holding that odors and fumes do constitute pollutants, the supreme court in *776 Kent Farms did not address any issue relating to odors and gave no indication that its holding would apply to facts such as those at issue in the instant case. Therefore, the Bremerton [v. Harbor Ins. Co., 92 Wash.App. 17, 963 P.2d 194 (1998)] and Cook cases remain binding law in Washington.[17]
And in Division Three's Kent Farms opinion, the court also distinguished Cook:[18]

Cook is distinguishable from this case. The sealant at issue was brought to the premises for the purpose of applying it to the exterior of the building. It was a substance that was on the premises for no other purpose and, thus, was inherently toxic or toxic even when applied as intended. However in this case, the alleged "pollutant" was diesel fuel. The fuel was delivered to the farm for use in the operation of the farm. Presumably, the fuel was intended to be used to power farm equipment. In such use, the fuel is not toxic. In other words, the difference between the sealant and diesel fuel is that the latter is not a pollutant when used as intended.[19]
We agree. Kent Farms and Cook are easily distinguishable. While Kent Farms involves a potential pollutant causing injury for reasons unrelated to its being a pollutant,[20]Cook involves a pollutant causing injury because it is a pollutant even when used as intended. We therefore conclude that Kent Farms did not implicitly overrule Cook and the "fumes" line of cases.[21]
The issue now is to determine whether Kent Farms or Cook applies here. That, in turn, depends on how the injury occurred. The Insureds assert that because the injury was caused by the contractor's negligence and the injury in Kent Farms was also the result of negligence, we should rely on Kent Farms. The Insureds are incorrect. While it is true that Kent Farms held the pollution exclusion did not apply because the injury there was "rooted in negligence,"[22] it based that conclusion on the circumstances of the injury in which, negligence independent of the diesel fuel caused the injury, and the fuel was not acting as a pollutant. That it was also potentially a pollutant was not relevant to the negligence that caused the injury. This is the same basis on which the courts distinguish Kent Farms from Cook. Here, the tenant was injured by fumes emanating from waterproofing material being used as it was intended. Had a container of waterproofing material hit the tenant and injured her, for example, then the case would be more akin to Kent Farms because the potential pollutant would have caused injury based on a negligent act, not because it is a pollutant. Similarly, had the contractor applied the material on the inside of the building rather than on the outside where it was supposed to be used, the contractor's negligence would, as in Kent Farms, be the cause of the injury. But here, the tenant was injured by the fumes emanating from the material that was being properly used when it caused the injury. As in Cook, the injury resulted from the pollutant acting as a pollutant, not by the negligent act of another person. We therefore affirm the trial court's summary judgment dismissal of the Insureds' suit.

II. Are the Contracts Illusory?
The Insureds contend that coverage under the insurance policies is illusory because the *777 definition of "occurrence" and the pollution exclusions are mutually exclusive. They assert:
Simply taking the policy language at face value, the exact same conduct that is a covered occurrence is an uncovered exclusion. If a person causes injury by engaging in a "continuous or repeated exposure to ... harmful conditions" that conduct is covered. However, if a person, inter alia, engages in a "discharge ... (or) release" of any "solid, liquid, gas ... fume ..." that conduct is excluded. As discussed above, these are merely two ways of describing the same conduct. Thus, the exclusion substantially takes away the coverage the policy purports to give....[23]
An insured's damage claim must be caused by an "occurrence." The American States policy defines "occurrence" as:
an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
The State Farm policy defines the term as:
an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage[.][24]
The policy language for the pollution exclusions is set forth in the facts above. The issue is whether the definitions of "occurrence" and the pollution exclusions cover the same claims. Is the exclusionary language and the inclusionary language materially the same? We conclude it is not.
The Washington Supreme Court's decision in Kent Farms allowing coverage despite the pollution exclusion establishes that the Insureds' argument is incorrect. The Insureds' position is that the pollution exclusions preclude coverage for all claims of exposure to pollutants. If this were true, Kent Farms would have held that a nearly identical pollution exclusion precluded coverage. The Insureds cannot have it both ways. They cannot argue both that Kent Farms is binding authority on the issue of whether the exclusions apply and also assert that the same exclusions create an illusory contract.
The Insureds assert that
what the covered occurrence definition identifies as a covered "exposure" to a "harmful condition" the uncovered pollution exclusion identifies as a[n], inter alia, "release" of a vapor, liquid, gas, fumes, etc. This is saying the same thing....
We sympathize with the Insureds' argument. Looking just at the language of the exclusions and definitions of occurrence, it is difficult to discern the difference. But the limitation Kent Farms places on the exclusion does make the necessary distinction. Claims in which a pollutant causes the injury are only excluded if the pollutant was being used and acting as a pollutant when it caused the injury. Thus, the Insureds' examples of claims that would be precluded under the policies are unpersuasive. The policies' pollution exclusions would not preclude coverage for a person who trips and falls over a stack of newspapers awaiting pick-up for recycling merely because the definition of pollutant includes "materials to be recycled." The materials awaiting recycling would have to be acting as a pollutant for the exclusion to apply. This is the very basis upon which Kent Farms held the exclusion did not preclude coverage. Accordingly, we reject the Insureds' contention that the contracts are illusory because they do afford material coverage despite the apparent conflict in the coverage and exclusion terms.
The Insureds request attorney fees under Olympic Steamship Co. v. Centennial Insurance Co.[25] Because we affirm summary judgment dismissal of the Insureds' complaint, we reject this request.
Affirmed.
ELLINGTON, J., concurs.
GROSSE, J., concurring.
I concur in the majority's resolution of this case because it is technically correct. But I write separately to underscore the absurdity of applying the pollution exclusion in the *778 context of Pacific Restoration and Waterproofing Inc.'s (Pacific Restoration's) business. Pacific Restoration is insured under the American States Insurance Co.'s business policy. Its job is to apply waterproofing material, which by definition requires bringing pollutants to job sites.
The effect of the pollution exclusion is to exclude from coverage virtually all claims arising from Pacific Restoration's business activities. While it is true that the exclusions would not preclude coverage if a canister of waterproofing material fell and injured someone, what good is business insurance that excludes from coverage activities that go to the heart of the business being insured? I am at a loss to discern for what Pacific Restoration pays its premiums. As the court observed in Kent Farms, Inc. v. Zurich Insurance Co.:
The qualified pollution exclusion clause, a precursor to the clause at issue here, came into existence so insurers could avoid the "yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment." Later, various forms of absolute pollution exclusion clauses, including the clause here, were incorporated into insurance policies in the wake of expanded environmental liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 (1995) (CERCLA). These clauses were clearly intended to exculpate insurance companies from liability for massive environmental cleanups required by CERCLA and similar legislation. The insurance companies' objective in creating both clauses was to avoid liability for environmental pollution. To read the absolute exclusion more broadly ignores the general coverage provisions.[26]
Pollution exclusions should not be permitted where they essentially preclude all coverage for injuries one would expect to arise from the insured's business. The Legislature should limit pollution exclusions before their broad reach swallows the coverage businesses purchase them to provide.
NOTES
[1] (Emphasis omitted.)
[2] (Emphasis omitted.)
[3] (Emphasis omitted.)
[4] CR 56(c).
[5] Trimble v. Wash. State Univ., 140 Wash.2d 88, 92, 993 P.2d 259 (2000).
[6] Id.
[7] Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990).
[8] Hall v. Custom Craft Fixtures, Inc., 87 Wash. App. 1, 9, 937 P.2d 1143 (1997).
[9] Am. Star Ins. Co. v. Grice, 121 Wash.2d 869, 874, 854 P.2d 622 (1993), supplemented by 123 Wash.2d 131, 865 P.2d 507 (1994).
[10] Transcon. Ins. Co. v. Pub. Utils. Dists. Util. Sys., 111 Wash.2d 452, 457, 760 P.2d 337 (1988) (citing Morgan v. Prudential Ins. Co. of Am., 86 Wash.2d 432, 434-35, 545 P.2d 1193 (1976)).
[11] 140 Wash.2d 396, 998 P.2d 292 (2000).
[12] Id. at 401, 998 P.2d 292 (emphasis added).
[13] 83 Wash.App. 149, 920 P.2d 1223 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997).
[14] Id. at 154, 920 P.2d 1223.
[15] The Insureds conceded at oral argument that if Cook survived Kent Farms, the pollution exclusions here preclude coverage.
[16] 190 F.Supp.2d 1209 (E.D.Wash.2002).
[17] Id. at 1218.
[18] 93 Wash.App. 414, 969 P.2d 109 (1998), aff'd, 140 Wash.2d 396, 998 P.2d 292 (2000). The Insureds assert that we should not look to Division Three's decision in Kent Farms because the Supreme Court issued an opinion in the case. But, the Supreme Court affirmed the Court of Appeals, and its opinion does not address Division Three's discussion of Cook, much less take issue with it. The Supreme Court had no reason to discuss Cook because the case was not relevant to the issue presented there.
[19] Id. at 419-20, 969 P.2d 109.
[20] Kent Farms, 140 Wash.2d at 402, 998 P.2d 292.
[21] The Insureds also argue that the Supreme Court's discussion of Gamble Farm Inn, Inc. v. Selective Insurance Co., 440 Pa.Super. 501, 656 A.2d 142 (1995), in Kent Farms indicates the "fumes" line of cases is no longer good law. They are incorrect. Kent Farms does not indicate, much less hold, that the fumes line of cases is no longer good law. Its cursory discussion of Gamble does not indicate otherwise.
[22] Kent Farms, 140 Wash.2d at 399, 998 P.2d 292.
[23] (Emphasis and citation omitted.)
[24] (Emphasis omitted.)
[25] 117 Wash.2d 37, 811 P.2d 673 (1991).
[26] 140 Wash.2d 396, 400-01, 998 P.2d 292 (2000) (citations omitted) (emphasis added).