IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| QUEST DIAGNOSTICS, INCORPORATED, | No. 85285-0-I |
| Appellant, | DIVISION ONE |
| v. | |
| AIG SPECIALTY INSURANCE COMPANY, UNDERWRITERS AT LLOYD'S SYNDICATES NO. KLN 0510 and TMKS 1880, PARTNER IRELAND INSURANCE DAC, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, AVIVA INSURANCE LTD., XL INSURANCE AMERICA INC., and ACE AMERICAN INSURANCE COMPANY, | UNPUBLISHED OPINION |
| Respondents. | |

BOWMAN, J. — Quest Diagnostics Incorporated holds insurance policies with several insurers that cover business interruption losses when direct physical loss or damage to property results in a civil authority order prohibiting access within a five-mile radius of their covered locations. In early 2020, Governor Jay Inslee issued Proclamation No. 20-13,[1] Proclamation No. 20-24,[2] and

---

[1] Proclamation by Governor Jay Inslee, No. 20-13 (Wash. Mar. 16, 2020), https://governor.wa.gov/sites/default/files/proclamations/20-13%20Coronavirus%20Restaurants-Bars%20%28tmp%29.pdf [https://perma.cc/ZQL6-P8HW].

[2] Proclamation by Governor Jay Inslee, No. 20-24 (Wash. Mar. 19, 2020), https://governor.wa.gov/sites/default/files/proclamations/20-24%20COVID-19%20non-urgent%20medical%20procedures%20%28tmp%29.pdf [https://perma.cc/BM69-Q3MY].

No. 85285-0-I/2

Proclamation No. 20-25[3] as a result of the COVID-19[4] outbreak, prohibiting nonemergency medical care and ordering citizens to "Stay Home." Quest sought coverage under the policies' civil authority provision for alleged business interruption losses suffered as a result of the proclamations. The insurers denied coverage, and Quest sued. The trial court dismissed Quest's complaint under CR 12(c). Because Quest fails to show that the presence of COVID-19 resulted in physical loss or damage to property causing the governor to issue stay-at-home orders, we affirm.

## FACTS

Quest is a national diagnostic testing company that performs laboratory tests for health care providers and other customers. Quest bought a "Global Property Insurance Policy" for coverage from March 16, 2020 to March 16, 2021. Quest's policy is a "subscription" policy, meaning several insurers shared the risk associated with providing the insurance.[5] Eight separate insurers subscribed to Quest's global policy, including AIG Specialty Insurance Company, Certain Underwriters at Lloyd's London Subscribing to Policy Number PTNAM2004878,[6] Partner Re Ireland Insurance DAC, Endurance American Specialty Insurance

---

[3] Proclamation by Governor Jay Inslee, No. 20-25 (Wash. Mar. 23, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-25%20Coronovirus %20Stay%20Safe-Stay%20Healthy%20%28tmp%29%20%28002%29.pdf [https://perma.cc/PJ48-WAEY].

[4] Coronavirus disease 2019.

[5] It is called a "subscription" policy because the insurers participate in the policy by "subscribing" to it.

[6] Named as Underwriters at Lloyd's Syndicates No. KLN 0510 and TMKS 1880 in the complaint.

2

Company, Steadfast Insurance Company, Aviva Insurance Ltd., XL Insurance America Incorporated, and ACE American Insurance Company (collectively Insurers). The Insurers each issued Quest a Global Property Insurance Policy (collectively Policies). The Policies are identical except for the policies of Lloyd's and Ireland, which also contain a "microorganism" exclusion.

Clause 5 of the Policies says that the Insurers cover "all risk of **direct** physical loss or damage to property . . . except as hereinafter excluded." Clause 7 explains that this includes coverage for:

**A.      Real and Personal Property**

All real and personal property while such property is located anywhere within the territorial limits of this policy . . . .

. . . .

**B.      Business Interruption - Gross Earnings**

1.      Loss due to the necessary interruption of business conducted by the Insured, including all interdependencies between or among companies owned or operated by the Insured resulting from loss or damage insured herein and occurring during the term of this policy to real and/or personal property described in Clause 7.A.

. . . .

**C.      Business Interruption - Loss of Profits**

. . . .

1.      Loss of gross profit as hereinafter defined, resulting from interruption of or interference with the business and caused by loss or damage to real or personal property as described in Clause 7.A of this policy during the term of the policy.

Clause 8 of the Policies "extends" the coverage described in clauses 7.B and 7.C to include:

B.  **Interruption by Civil or Military Authority**

This policy is extended to insure loss sustained during the period not to exceed 30 days when as a result of, direct physical loss or damage not excluded in Clause 6, access to property within [five] miles of the Insured's Location is prohibited by order or action of Civil or Military Authority.

Finally, clause 6 contains a "contaminants or pollutants" exclusion. The Policies do not insure the following:

F.  [L]oss or damage arising out of the dispersal, release or escape of **contaminants** or **pollutants** into or upon land, the atmosphere or any water course or body of water, but not excluding resultant loss or damage from **contaminants** or **pollutants** to insured property caused by or resulting from loss or damage not otherwise excluded.

The Policies define "contaminants or pollutants" as

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances.

In early 2020, to help curtail the spread of COVID-19, Governor Inslee issued several proclamations limiting business activities in Washington. Proclamation No. 20-13 prohibited people from gathering in public venues for entertainment, recreational, or food service purposes. Proclamation No. 20-24 prohibited all hospitals, ambulatory surgery centers, and dental, orthodontic, and endodontic offices from providing nonemergency health care services. And

4

Proclamation No. 20-25 prohibited people from leaving their home or attending social gatherings and allowed only essential businesses to operate.

On April 13, 2020, Quest timely notified the Insurers of a claim for coverage for business income losses resulting from the COVID-19 pandemic. Quest claimed the Policies' civil authority provision in clause 8.B covered its losses because COVID-19 damaged properties within a five-mile radius of its facilities in Washington, resulting in the Governor's proclamations restricting access to those properties and Quest's covered locations. In 2021, Quest gave the Insurers copies of the governor's proclamations, a more detailed explanation of its claim, and a schedule of its claimed losses. On September 20, 2021, the Insurers denied Quest's claim, explaining that the COVID-19 pandemic did not cause any physical loss or damage to property and, even if it had, the contaminants or pollutants exclusion precluded coverage.

On January 28, 2022, Quest sued the Insurers, seeking a declaratory judgment that the Policies cover its "losses resulting from the interruption of its business by civil authority orders." It also alleged breach of contract. Quest alleged:

> Given that, beginning in early 2020, a significant percentage of the [United States] population carried the coronavirus at any given time, it was statistically certain or near-certain that the coronavirus was present in the communities of every major metropolitan area in the country by April 2020, and thus the coronavirus was present on property located in those areas, physically altering those properties and causing them to become physically uninhabitable, unsafe, and unfit for their normal and intended uses, thereby resulting in physical loss or damage to property, as well as causing substantial damage to human health and human welfare.

. . . Quest is afforded coverage under the Policies for business income loss resulting from the civil authority orders applicable to King County.

On January 23, 2023, the Insurers jointly moved for judgment on the pleadings under CR 12(c). The Insurers argued that Quest's complaint failed to show direct physical loss or damage to property under the Policies' civil authority provision. And, even if Quest could show such loss or damage, the contaminants or pollutants exclusion applied.[7] The trial court granted the Insurers' joint motion and dismissed Quest's complaint.

Quest appeals.

ANALYSIS

Quest argues that the trial court erred by dismissing its claims under CR 12(c). It contends it need not show loss or damage to "property" under the civil authority clause of the Policies and, in any event, its complaint sufficiently alleges that COVID-19 caused direct physical loss or damage to property, resulting in the governor's proclamations.

Under CR 12(c), after the pleadings are closed, any party may move for judgment on the pleadings. We treat a CR 12(c) motion for judgment on the pleadings " 'identically to a CR 12(b)(6) motion' " to dismiss[8] and review the trial court's decision de novo. *Wash. Trucking Ass'ns v. Emp't Sec. Dep't*, 188 Wn.2d 198, 207, 393 P.3d 761 (2017) (quoting *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d

---

[7] Insurers Lloyd's and Ireland moved separately under CR 12(c), arguing that its policies' microorganism exclusion also precluded coverage.

[8] CR 12(b)(6) governs motions to dismiss for failure to state a claim on which a court can grant relief.

6

198, 203, 289 P.3d 638 (2012)). "Dismissal under either subsection is 'appropriate only when it appears beyond doubt' that the plaintiff cannot prove any set of facts that 'would justify recovery.' " *Id.* (quoting *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007)). To this end, "[a]ll facts alleged in the complaint are taken as true, and we may consider hypothetical facts supporting the plaintiff's claim." *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962-63, 331 P.3d 29 (2014).

We examine hypothetical facts as the " 'conceptual backdrop' " against which we consider a challenge to legal sufficiency. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 214, 118 P.3d 311 (2005)[9] (quoting *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995)). Any hypothetical situation conceivably raised by the complaint defeats the motion if it is legally sufficient to support the plaintiff's claim. *Id.* But if a plaintiff's claim remains legally insufficient after considering the facts in the complaint and any proffered hypotheticals, we will affirm dismissal. *Id. at 215.*

We liberally construe insurance policies to provide coverage wherever possible. *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 694, 186 P.3d 1188 (2008). "A determination of coverage involves two steps: first, '[t]he insured must show the loss falls within the scope of the policy's insured losses.' " *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272, 267 P.3d 998 (2011)[10] (quoting *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731,

---

[9] Internal quotation marks omitted.

[10] Alteration in original.

837 P.2d 1000 (1992)).  "Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.' "  *Id.* (quoting *McDonald*, 119 Wn.2d at 731).

A.  Physical Loss or Damage to Property

Quest argues the plain language of the Policies' civil authority provision extends coverage beyond physical loss or damage to "property."  According to Quest, the provision more broadly extends coverage to "something else," including loss or damage to "human health or human welfare."  We disagree.

Construction of an insurance policy is a question of law.  *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 65, 882 P.2d 703 (1994).  We examine the policy "to determine whether under the plain meaning of the contract there is coverage."  *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998).  To give effect to every clause in an insurance policy, we construe the policy as a whole and give " 'a fair, reasonable, and sensible construction' " to its terms.  *Bordeaux*, 145 Wn. App. at 693[11] (quoting *Kitsap County*, 136 Wn.2d at 575).  When the language of an insurance policy is clear and unambiguous, we must enforce the contract as written.  *Cook v. Evanson*, 83 Wn. App. 149, 152, 920 P.2d 1223 (1996).  An ambiguity exists if the policy language is susceptible to two reasonable but different interpretations. *Id.*  We resolve any ambiguity in an insurance contract against the insurer. *Queen City Farms*, 126 Wn.2d at 83.

---

[11] Internal quotation marks omitted.

8

Viewing the Policies as a whole, the plain language shows coverage for losses associated with the loss of or damage to only property. First, the Policies are "Global Property" policies. And clause 5 of the Policies defines the scope of coverage as insuring against all risk of "**direct** physical loss or damage to property" except as otherwise excluded. Clause 6 then describes those circumstances under which the Policies will not cover loss or damage to "property."

Clause 7.A reiterates that the Policies insure all "real and personal property" while such property is located anywhere within the territorial limits of the Policies. Clauses 7.B and 7.C then describe business interruption coverage for lost earnings and lost profits caused by loss or damage to the insured's "property." And clause 8 extends the business interruption coverage under clauses 7.B and 7.C to certain losses caused by loss or damage to "property" other than the insured's. Finally, clause 9 of the Policies defines the scope of loss covered under the civil authority provision. It says that the "length of time for which loss may be claimed," or the "period of recovery," will commence "with the date of such loss or damage" and shall not exceed the time required to "rebuild, repair, or replace the property that has been destroyed or damaged."

Still, Quest argues that the Policies' definition of "contaminants or pollutants" shows that the Insurers intended to extend the civil authority provision coverage to loss or damage to human health or welfare. As stated, that definition includes

> any solid, liquid, gaseous or thermal irritant or contaminant, . . .
> which after its release can cause or threaten damage to human

> health or human welfare or causes or threatens damage,
> deterioration, loss of value, marketability or loss of use to property
> insured hereunder.

But this definition is isolated and applies only in the context of a policy exclusion. Under clause 6.F of the Policies, coverage is excluded if a defined contaminant or pollutant causes loss or damage to "property." Quest points to no provision in the policy adopting the definition as an extension of the scope of coverage beyond loss or damage to property.

B. Sufficiency of Quest's Complaint

Quest argues that even if it must show physical loss or damage to property to recover under the civil authority provision of the Policies, its complaint sufficiently alleges that COVID-19 caused such loss. Citing *Hill & Stout, PLLC v. Mutual of Enumclaw Insurance Co.*, 200 Wn.2d 208, 515 P.3d 525 (2022), the Insurers argue that the facts in Quest's complaint are insufficient. We agree with the Insurers.

In *Hill & Stout*, the insureds operated two dental practices covered by an insurance policy for " 'direct physical loss of or damage to [the] Covered Propert[ies].' " 200 Wn.2d at 213. The insureds argued that under a " 'loss of functionality' " theory, the policy covered their COVID-19-related business income losses because Proclamation No. 20-24 " 'physically deprived' " them of the use of their property. *Id.* at 220. Our Supreme Court disagreed, noting that loss of functionality requires "some *physical* effect on the property." *Id.* at 223-24. The court recognized that "there are likely cases in which there is no physical *alteration* to the property but there is a direct physical loss under a

10

theory of loss of functionality.  However, this case is not one of them."  *Id.* at 221.

And it found no loss of functionality because

> there was no alleged imminent danger to the property, no
> contamination with a problematic substance, and nothing that
> *physically* prevented use of the property or rendered it useless; nor
> were the dental offices rendered unsafe or uninhabitable because
> of a dangerous physical condition.  Accordingly, the [p]roclamation
> did not *physically* cause a loss of functionality of the property
> because it continued to be functional.

*Id.* at 221-22.  In essence, the insureds could not use the property in the way that

they wanted, but that alleged loss is not "physical."  *Id*. at 220.

Here, Quest claimed coverage under the Policies' civil authority provision.

Under that provision, Quest must show that as a result of "direct physical loss or

damage" to property, an order of civil authority prohibited access within five miles

of its covered location.  Quest alleged that the presence of COVID-19 "physically

alter[ed]" properties near its facilities, causing them to become "physically

uninhabitable, unsafe, and unfit" for their intended uses, resulting in the issuance

of the governor's proclamations and Quest's business income losses.

But, like the insureds in *Hill & Stout*, Quest's allegations do not show that

the presence of COVID-19 caused direct imminent danger to property or

physically rendered property useless, uninhabitable, or unsafe because of a

dangerous physical condition.  Nor does Quest show that the governor entered

the proclamations in response to any dangerous physical conditions resulting

from damage to property rather than out of concern for public health and safety.

Indeed, the governor's proclamations declare that he issued the orders "to curtail

11

the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations."[12]

Our conclusion that the presence of COVID-19 does not amount to direct physical loss or damage to property aligns with state and federal decisions nationwide rejecting the same argument. *See Wash. State Convention Ctr. Pub. Facilities Dist. v. Emps. Ins. Co. of Wausau*, No. 2:23-CV-1386-BJR, 2024 WL 810692, at *6 (W.D. Wash. Feb. 27, 2024) (court order) ("[N]othing '*physically* prevented use of the property or rendered it useless[.]' . . . Plaintiff had access to the Convention Center throughout the relevant time-period. Thus, as the Washington Supreme Court has already stated, '[T]he loss of use due to [Governor Inslee's] [p]roclamations did not trigger coverage.' ")[13] (quoting *Hill & Stout*, 200 Wn.2d at 225); *Brandywine Valley Premier Hosp. Grp. v. Fireman's Fund Ins. Co.*, No. 22-2221, 2023 WL 5044991, at *5 (E.D. Pa. Aug. 8, 2023) (court order) ("Although physical particles of the COVID-19 virus may have come into contact with [the] insured property, there is no direct causal relationship between that contact and [the insured]'s business loss."); *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 359 So.3d 922, 929 (La. 2023)

---

[12] Proclamation No. 20-13; *see also* Proclamation No. 20-24. Quest argues the governor issued the proclamations to protect loss to private property by recognizing that the COVID-19 pandemic "remains a public disaster affecting life, health, *property* or the public peace." Proclamation Nos. 20-13, 20-24, 20-25 (emphasis added). But that language does not explain why the governor issued the orders. Instead, it cites the basis for the governor's authority to prohibit activity under his state emergency powers. *See* RCW 43.06.220(1)(h) (after proclaiming a state of emergency, the governor may "issue an order prohibiting . . . [s]uch other activities as he or she reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace").

[13] Fourth alteration in original.

("COVID-19 did not cause damage or loss that was physical in nature");

*Tapestry, Inc. v. Factory Mut. Ins. Co.*, 482 Md. 223, 251, 286 A.3d 1044 (2022)

("the presence of [c]oronavirus in the air and on surfaces at [plaintiff]'s properties

did not cause 'physical loss or damage' as that phrase is used in the [p]olicies").

Because Quest fails to show that the presence of COVID-19 resulted in

direct physical loss or damage to property causing the governor to issue stay-at-

home orders, we affirm the trial court's order dismissing its complaint under CR

12(c).[14]

Brennan, J

WE CONCUR:

Chung, J.                    Dwyer, J.

---

[14] Because we conclude that Quest does not show direct physical loss or damage to property, we do not address the Insurers' arguments that Quest's losses are excluded by the pollutants or contaminants exclusion or the microorganism exclusion in the Policies.