110 P.3d 733 (2005)
154 Wash.2d 165
The QUADRANT CORPORATION, a Washington corporation; Equity Residential Properties Trust, a Maryland corporation; and Roy Street Associates, a Washington general partnership, Petitioners,
v.
AMERICAN STATES INSURANCE COMPANY, a foreign corporation, and State Farm Fire and Casualty Company, a foreign corporation, Respondents.
No. 74663-0.
Supreme Court of Washington, En Banc.
Argued September 28, 2004.
Decided April 28, 2005.
*735 Dan'L Wayne Bridges, Law Offices of Dan'L W Bridges, Bellevue, for Petitioners.
Mary R. DeYoung, Reed McClure, Seattle, for Respondents.
BRIDGE, J.
¶ 1 A tenant in an apartment building was overcome by fumes and became ill after a restoration company applied sealant to a nearby deck. The tenant sued the restoration company and the owners of the apartment building. Both the restoration company and the building owners settled and the owners now claim that their business liability insurance should cover the loss.
¶ 2 The business liability policies at issue here both contain absolute pollution exclusion clauses, which the insurers now argue apply to exclude coverage for the tenant's claim. The building owners contend that after this court's decision in Kent Farms, Inc. v. Zurich Insurance Co., 140 Wash.2d 396, 402, 998 P.2d 292 (2000), the pollution exclusion cannot be applied to exclude occurrences that are not "traditional environmental harms." The owners also assert that if it is applied as the insurers suggest, the pollution exclusion would render the policy illusory with regard to the restoration company.
¶ 3 We hold that the plain language of the absolute pollution exclusion clause encompasses the injuries at issue here and therefore the tenant's claim is excluded from coverage. We find that the Kent Farms case is distinguishable on its facts and instead we adopt the reasoning of Cook v. Evanson, 83 Wash.App. 149, 920 P.2d 1223 (1996), a case similar to this one in that it involved injuries that resulted from toxic fumes. Furthermore, we conclude that the pollution exclusion clause does not render the policies illusory with respect to the building owners because the insurance policy will still cover a variety of claims, including slip and fall accidents, despite the pollution exclusion. We note that the restoration company is not a party to this case and, thus, the question of whether the insurance contract is illusory with respect to the restoration company is not properly before us. The insureds' request for attorney fees is denied.

I

Statement of Facts
¶ 4 The facts of this case are not in dispute. Roy Street Associates owns an apartment building located at 200 Roy Street in Seattle.[1] In 1996, the building owners hired Pacific Restoration to make repairs and improvements on the building. In the course of completing the repair work, Pacific Restoration applied waterproofing sealants to the surface of a deck. The parties agree that Pacific Restoration used PC-220 and Polyglaze AL, manufactured by Polycoat Products. Both contain various chemicals, including a toxic substance called toluene diisocyanate (TDI), whose fumes can irritate the respiratory tract and, in high concentrations, can cause central nervous system depression.
¶ 5 Delores Kaczor was a tenant in the apartment adjacent to the deck. Pacific failed to warn Kaczor that it would be applying the sealant and then failed to properly ventilate the area. Fumes entered her apartment as the deck dried, making her ill enough to require hospitalization. Specifically, Kaczor's estate claimed that exposure to the fumes caused "exacerbation of her preexisting chronic obstructive pulmonary disease" and led to her "debilitating and declining health." Clerk's Papers (CP) at 175. Kaczor filed a lawsuit against Pacific Restoration and the building owners claiming personal injury and property damage. Kaczor died in 1998 and her lawsuit was dismissed without prejudice. In 1999, her estate filed a second lawsuit based on Kaczor's injuries. That suit was settled for $30,000 and dismissed in July 2000.
¶ 6 In early 1996, Pacific Restoration held a general liability policy from American States Insurance Company. The policy provided liability coverage to Pacific Restoration and to the apartment owners as additional *736 insureds. The American States policy was subject to the following exclusion:
This insurance does not apply to:
....
f. Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
....
(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;
....
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
CP at 208-09. Similarly, Roy Street Associates held a general liability insurance policy from State Farm Fire and Casualty Company, which included Quadrant and Holly Corporation as additional insureds. The policy was subject to a nearly identical exclusion.[2] Based on the pollution exclusions, the insurers denied coverage for the Kaczor claim.
¶ 7 The insureds filed this action, claiming that the insurers wrongfully denied their request for defense and indemnity with respect to the Kaczor claim. Both the insurers and the insureds filed motions for summary judgment based on agreed facts, arguing whether Kaczor's claim would be covered by the policy as a matter of law.[3] The insurers claimed that the plain language of the pollution exclusion renders it applicable in these circumstances and, therefore, they were justified in denying coverage. In contrast, the insureds claimed that after this court's decision in Kent Farms, the absolute pollution exclusion must be interpreted to apply only to traditional environmental harms, not personal injuries arising from ordinary negligence. Because this claim arguably did not involve traditional environmental pollution, the insureds asserted that the exclusion cannot apply under these circumstances.
¶ 8 The trial court granted summary judgment in favor of the insurers and denied the insureds' motion. The insureds appealed and the Court of Appeals affirmed, holding that Kent Farms was factually distinguishable and this case was instead comparable to Cook, a similar case in which toxic fumes had caused the injury. Quadrant Corp. v. Am. States Ins. Co., 118 Wash.App. 525, 533, 76 P.3d 773 (2003). The Court of Appeals also held that the exclusion was not so broad that it rendered the insurance contracts illusory.[4] The insureds filed a petition for review, which this court granted.

II

Analysis
¶ 9 We must determine whether summary judgment was properly granted in *737 favor of the insurers. To do so, we first decide whether the absolute pollution exclusion at issue here bars coverage where the fumes of a toxic substance caused the injury. Second, we determine whether the absolute pollution exclusion is so broad that it renders the insurance contracts illusory. On review of summary judgment, we engage in the same inquiry as the trial court. Int'l Bhd. of Elec. Workers Local Union No. 46 v. Trig Elec. Constr. Co., 142 Wash.2d 431, 434-35, 13 P.3d 622 (2000). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. at 435, 13 P.3d 622. Interpretation of an insurance contract is a question of law subject to de novo review. See Overton v. Consol. Ins. Co., 145 Wash.2d 417, 424, 38 P.3d 322 (2002).
¶ 10 The criteria for interpreting insurance contracts in Washington are well settled. We construe insurance policies as contracts. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 665, 15 P.3d 115 (2000). We consider the policy as a whole, and we give it a "`"fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."'" Id. at 666, 15 P.3d 115 (quoting Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., 134 Wash.2d 413, 427-28, 951 P.2d 250 (1998) (quoting Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 627, 881 P.2d 201 (1994))). Most importantly, if the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists. See id.
¶ 11 We will hold that a clause is ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." Id. (quoting B & L Trucking, 134 Wash.2d at 427-28, 951 P.2d 250). If a clause is ambiguous, we may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. Id. Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured. Id. But while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results. See Findlay v. United Pac. Ins. Co., 129 Wash.2d 368, 374, 379, 917 P.2d 116 (1996); Transcon. Ins. Co. v. Wash. Pub. Utils. Dists. Util. Sys., 111 Wash.2d 452, 457, 760 P.2d 337 (1988). Finally, in Washington the expectations of the insured cannot override the plain language of the contract. See Findlay, 129 Wash.2d at 378, 917 P.2d 116.

Absolute Pollution Exclusion
¶ 12 Pollution Exclusions, Generally: Pollution exclusions originated from insurers' efforts to avoid sweeping liability for long-term release of hazardous waste. Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 795 N.E.2d 15, 18, 763 N.Y.S.2d 790 (2003). Originally, the standard pollution exclusion that was incorporated into commercial general liability policies was a "`qualified'" exclusion that precluded coverage unless the release of pollutants was "`sudden and accidental.'" Id. 763 N.Y.S.2d 790, 795 N.E.2d at 18-19. The qualified pollution exclusion was limited to release or discharge of pollutants "`into or upon land, the atmosphere or any water course or body of water.'" Id. 763 N.Y.S.2d 790, 795 N.E.2d at 18.
¶ 13 After much litigation surrounding the meaning of "sudden and accidental," a new standard pollution exclusion was promulgated in the mid-1980s. Id. 763 N.Y.S.2d 790, 795 N.E.2d at 19. This time, the pollution exclusion was absolute; it no longer contained the "sudden and accidental" exception. Id. Moreover, most absolute pollution exclusions omitted the language referring to release upon the land, atmosphere, or water. Id. The exclusions at issue in this case are absolute pollution exclusions.
¶ 14 The rise of absolute pollution exclusions sparked new controversy over whether the exclusion applied to incidents that did not involve so-called classic environmental pollution. Id. Many courts have interpreted absolute pollution exclusions specifically in the context of claims for bodily injuries arising out of the release of toxic fumes. Some have concluded that the absolute pollution exclusion *738 does not apply where personal injury has resulted from the negligent release of fumes during the ordinary course of the insured's business. See, e.g., Nautilus Ins. Co. v. Jabar, 188 F.3d 27, 29-31 (1st Cir.1999); Am. States Ins. Co. v. Koloms, 177 Ill.2d 473, 687 N.E.2d 72, 82, 227 Ill.Dec. 149 (1997) ("[T]he exclusion applies only to those injuries caused by traditional environmental pollution."). These courts have relied on several different theories. Some have concluded that the terms "discharge," "dispersal," "irritant," and "contaminant" are terms of art in environmental law, thus rendering the exclusion ambiguous. See Belt Painting, 763 N.Y.S.2d 790, 795 N.E.2d at 19 (citing Nautilus Ins. Co., 188 F.3d at 30). Others have concluded that because the historical purpose of the prior qualified pollution exclusion was to shield insurers from sweeping liability for environmental cleanups, the absolute pollution exclusion clause could be reasonably interpreted to apply only to traditional environmental harms. See id.; Koloms, 227 Ill. Dec. 149, 687 N.E.2d at 81. Finally, some courts have concluded that a "commonsense approach" is necessary and the pollution exclusion should not be read to apply to "injuries resulting from everyday activities gone slightly, but not surprisingly, awry." Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043-44 (7th Cir.1992).
¶ 15 However, a majority of courts has concluded that absolute pollution exclusions unambiguously exclude coverage for damages caused by the release of toxic fumes. Cincinnati Ins. Co. v. Becker Warehouse, Inc., 262 Neb. 746, 635 N.W.2d 112, 118 (2001) (listing cases); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1137 n. 2 (Fla.1998) (noting that insurers and amici cited to more than 100 cases from 36 other states that had applied the plain language of the exclusion clause to deny coverage). See, e.g., Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co., 162 F.3d 821, 825-26 (4th Cir.1998); Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 846 (11th Cir.1998) (holding similar language unambiguously excluded coverage for bodily injuries sustained by breathing vapors emitted from roofing products); Owners Ins. Co. v. Farmer, 173 F.Supp.2d 1330, 1333-34 (N.D.Ga.2001) ("the unambiguous language of the policy excludes all pollutants and does not exclude pollutants based on their source or location"); Bituminous Cas. Corp. v. Cowen Constr., Inc., 2002 Ok 34, 55 P.3d 1030, 1035 (holding similar language excluded coverage for property damage or bodily injury regardless of whether there was damage to the general environment); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 521-22 (Tex.1995).
¶ 16 Absolute Pollution Exclusions in Washington: The Washington Court of Appeals first interpreted an absolute pollution exclusion in 1996. Cook, 83 Wash.App. at 153, 920 P.2d 1223. In Cook, the insured contractor applied a concrete sealant to a building. Id. at 151, 920 P.2d 1223. The material safety data sheet described the sealant as a "`[r]espiratory irritant,'" and the product information contained warnings regarding adequate ventilation. Id. The contractor failed to seal off an air intake vent, fumes were sucked into the building, and some of the building's occupants suffered respiratory damage. Id. The insurer argued that the pollution exclusion clause in the contractor's insurance policy, one that is substantially the same as the exclusion in this case, precluded coverage. See id. at 152-54, 920 P.2d 1223.
¶ 17 The Cook appellants argued that the pollution exclusion should be interpreted to cover only traditional environmental harms, but not injuries arising from normal business operations. Id. at 154, 920 P.2d 1223. They contended that the drafting history of the pollution exclusion clause supported limiting the clause's application to traditional environmental pollution cases. Id. at 156, 920 P.2d 1223. But the Cook court concluded that when the language of an insurance policy is clear and unambiguous, a court must enforce the contract as written. Id. at 152, 920 P.2d 1223. The court noted that "[a] party can present drafting history to assist in determining a reasonable construction after the court finds a clause ambiguous. We cannot use the drafting history to find the clause ambiguous, however." Id. at 156, 920 *739 P.2d 1223. (second emphasis added) (citing Queen City Farms v. Cent. Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 87, 882 P.2d 703, 891 P.2d 718 (1994)).
¶ 18 The plain language of the Cook policy made no distinction based on "classic environmental pollution," the exclusion specifically included injuries at the insured's work site, and a reasonable person would recognize the sealant as a pollutant. Id. at 154, 920 P.2d 1223. Therefore, the policy language was unambiguous and, absent ambiguity, the court could not limit the exclusion. Id. This court denied review. Cook v. Evanson, 131 Wash.2d 1016, 936 P.2d 416 (1997).
¶ 19 In 1998, the Court of Appeals again interpreted an absolute pollution exclusion clause whose language was substantially similar to the clause at issue here. City of Bremerton v. Harbor Ins. Co., 92 Wash.App. 17, 19, 963 P.2d 194 (1998). In Harbor Insurance, the city sought insurance coverage for claims based upon emission of noxious gases, odors, and fumes from the city's sewage treatment plant. Id. at 18, 963 P.2d 194. The insurer denied coverage based on the absolute pollution exclusion. Id. at 20, 963 P.2d 194. The Harbor Insurance court looked to the policy's definition of pollutant and concluded that it unambiguously included fumes and gases. Id. at 23, 963 P.2d 194. Furthermore, a reasonable person reviewing the language would conclude that noxious fumes would fall within the meaning of pollutant as defined in the policy exclusion. Id. Therefore, the pollution exclusion clause precluded coverage in that case. See id. at 24, 963 P.2d 194.
¶ 20 Then, in 2000, this court accepted review of an absolute pollution exclusion case. Kent Farms, 140 Wash.2d at 397, 998 P.2d 292. In Kent Farms, a fuel deliveryman was injured when the farm's shutoff valve malfunctioned and diesel fuel began to spill from the farm's tank. Id. at 397-98, 998 P.2d 292. The deliveryman attempted to reattach the hose in order to prevent the spill of thousands of gallons of fuel. Id. In doing so, he was doused with fuel, which went down his throat and into his lungs and stomach. Id. at 398, 998 P.2d 292. The deliveryman sued Kent Farms, whose insurance company denied coverage based on a pollution exclusion that contained language identical in all relevant respects to the clause at issue in this case.[5]Id.
¶ 21 The court explained that the Kent Farms cause of action was "rooted in negligence, not in environmental harm caused by pollution," because the plaintiff alleged "negligence in the maintenance and design of a fuel storage facility that resulted in immediate bodily injury when a high-pressure jet of liquid struck him." Id. at 399, 998 P.2d 292. In other words, it was the defect in the shutoff valve, not the toxic character of the fuel, that was central to the injury. Thus, the court framed the issue as whether the mere fact that a pollutant "appears in the causal chain" can trigger the application of the exclusion clause. Id.
¶ 22 While this court noted that the Court of Appeals had labeled the pollution exclusion ambiguous, it did not explicitly determine whether the clause was in fact ambiguous. Id. at 398-99, 998 P.2d 292. Instead, the Kent Farms court explained that to resolve the issue, it had to "determine the purpose and scope of the exclusion." Id. at 399, 998 P.2d 292. Relying on Queen City Farms, 126 Wash.2d 50, 882 P.2d 703, a case in which this court interpreted a qualified pollution exclusion, the Kent Farms court concluded that it was required to "view the exclusion in light of the whole policy to determine whether, in that context, the exclusion applies." Kent Farms, 140 Wash.2d at 400, 998 P.2d 292.[6] The court began by "examining what the exclusion and similar exclusions are intended to accomplish." Id.
*740 ¶ 23 The Kent Farms court explained that the qualified pollution exclusion clause, was initially adopted so that insurers could avoid the "`yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment.'" Id. (quoting Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374, 381 (1986)). Later, various forms of the absolute pollution exclusion clause were incorporated into insurance policies in the wake of expanded environmental liability under federal law; thus, the absolute pollution exclusion clauses "were clearly intended to exculpate insurance companies from liability for massive environmental cleanups required by CERCLA and similar legislation." Id. at 401, 998 P.2d 292. Therefore, the exclusion specifically addressed "those situations in which injury was caused by environmental damage." Id.
¶ 24 The Kent Farms court reasoned that the injured deliveryman was not "polluted" by diesel fuel and more importantly, the fuel was not "acting as a `pollutant' when it struck him." Id. To hold otherwise would "broaden the application of the exclusion far beyond its intended purpose." Id. The average purchaser of a comprehensive liability policy reasonably expects broad coverage for liability arising from business operations and exclusions should be strictly construed against the insurer. Id. at 401-02, 998 P.2d 292. Kent Farms would have reasonably believed that injuries arising from faulty equipment would be beyond the scope of the exclusion and would be covered. Id. at 402, 998 P.2d 292.
¶ 25 The court then noted that cases from other states had similarly held that the absolute pollution exclusion did not apply "much beyond traditional environmental torts." Id. at 402, 998 P.2d 292. In Gamble Farm Inn, Inc. v. Selective Insurance Co., 440 Pa.Super. 501, 656 A.2d 142, 145 (1995), a Pennsylvania Superior Court held that insurance companies could not deny coverage for injuries resulting from fumes that escaped as the result of a clogged flue. Kent Farms, 140 Wash.2d at 402, 998 P.2d 292. To do so would be at odds with the original purpose of the exclusion to protect insurance companies from "a potentially vast and unforeseen liability for major environmental disasters." Id. Similarly, the New York Court of Appeals held that a pollution exclusion clause did not apply to preclude coverage for inhalation of asbestos fibers because it was ambiguous whether the clause applied to the release of fibers indoors. Id. (citing Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 609 N.E.2d 506, 512, 593 N.Y.S.2d 966 (1993)). The Kent Farms court concluded that these cases were consistent with its analytical approach.
¶ 26 Finally, the Kent Farms court summarized:
The exclusion, when viewed in the context of its purpose, does not apply merely because a potential pollutant was involved in the causal chain. Instead, the exclusion applies to "occurrences" involving the pollutant as a pollutant. Our approach is consonant with the understanding of the average purchaser of insurance and consistent with the provisions of the insurance policy as a whole; that is, the pollution exclusion clause was designed to exclude coverage for traditional environmental harms. We will not expand the scope of the exclusion clause beyond its intended purpose.
Id. at 402, 998 P.2d 292 (emphasis added). Therefore, without mentioning Cook, and without explicitly determining whether the pollution exclusion was ambiguous, the Kent Farms court concluded that the exclusion was designed to preclude coverage in the case of traditional environmental harms or where the pollutant acted as a pollutant. Id.; see also id. at 401, 998 P.2d 292 ("Most importantly, the fuel was not acting as a `pollutant' when it struck him.").
¶ 27 In 2002, the United States District Court for the Eastern District of Washington was faced with the issue of whether various pollution exclusions unambiguously excluded coverage of claims arising from odors emitted from a compost facility. City of Spokane v. United Nat'l Ins. Co., 190 F.Supp.2d 1209, 1217 (E.D.Wash.2002). After tracing the law of absolute pollution exclusions in Washington, the court noted that Kent Farms did not address any issue relating to odors and concluded that Cook and Harbor Insurance remained good law in *741 Washington. Id. at 1218.[7] Thus, at least one court has concluded that this court's decision in Kent Farms did not overrule Cook.
¶ 28 Application of the Absolute Pollution Exclusion in this Case: With this background in mind, we now turn to the case at hand. In this case, the Court of Appeals held that the underlying injury and cause of action were primarily the result of the toxic character of the pollutant and therefore the pollution exclusion would apply. Quadrant Corp., 118 Wash.App. at 526, 76 P.3d 773 ("the underlying injury and cause of action are the result of a pollutant acting as a pollutant"). The Court of Appeals concluded Cook and Washington's other "fumes" cases remain good law because the facts of those cases are distinguishable from the facts of Kent Farms. Id. at 530-31, 76 P.3d 773. Unlike the diesel fuel in Kent Farms, Cook involved a substance whose toxicity could cause injury even when used as intended. See id. at 531-32, 76 P.3d 773. Thus, the Cook reasoning and not the Kent Farms rule would control when fumes caused injury and where the pollutant was being used as it was intended. See id. Because the tenant in this case was injured by fumes emanating from water proofing material that was being used as intended, the air in her apartment was "polluted." Thus, the pollution exclusion applied and the court affirmed the summary judgment dismissal of the insureds' suit. Id. at 532-33, 76 P.3d 773. We agree.
¶ 29 As stated above, in Washington, if insurance policy language is clear and unambiguous, a court may not modify the contract to create an ambiguity where none exists. Weyerhaeuser, 142 Wash.2d at 666, 15 P.3d 115. An ambiguity exists only if the policy language is susceptible to two reasonable but different interpretations. Id. While exclusions should be strictly construed, a strict application should not trump the plain language of the exclusion. See Transcon. Ins. Co., 111 Wash.2d at 457, 760 P.2d 337.
¶ 30 In this case, the policy language clearly states that the liability coverage does not apply to bodily injury or property damage arising out of the dispersal, seepage, migration, release, or escape of a gaseous irritant, including vapors, fumes and chemicals, at any premises owned by the insured or any premises onto which a contractor or subcontractor hired by the insured has brought a pollutant. CP at 209, 297-98, 308. The language clearly applies to bodily injury and property damage; it is not limited to actions for cleanup costs.[8] Unlike the earlier "qualified pollution exclusion," the clause at issue here does not limit coverage to a release of pollutants upon the land, atmosphere, or water. The exclusion specifically includes injuries at any premises owned by the insured and injuries resulting from pollutants brought onto the premises by contractors working on behalf of the insured.
¶ 31 When considering the facts of this case, it is difficult to see how a reasonable person could interpret the policy language such that it would not encompass the claim at issue here. The Kaczor estate claims that she suffered bodily injury and property damage when the deck sealant fumes drifted or migrated into her apartment. The sealant was applied at property owned by the insureds. In addition, Pacific Restoration was hired to apply the sealant; they brought the sealant onto the premises for the purpose of applying it to the deck owned by the insureds. The parties agree that the sealants at issue here, PC-220 and Polyglaze AL, contained TDI, a toxic substance which can irritate the respiratory tract and, in high concentrations, can cause central nervous system depression. CP at 176. The material safety data sheet for these products indicates that their ingredients are toxic and recommends precautions such as adequate ventilation, respiratory protection, protective clothing, and eye protection. CP at 197. Furthermore, the Federal Clean Air Act lists TDI as a hazardous air pollutant. See 42 *742 U.S.C. § 7412(b)(1). The contents of the sealant unambiguously fall within the policy definition of pollutant.[9]
¶ 32 The insureds argue that this court's decision in Kent Farms requires us to conclude that the absolute pollution exclusion can be applied only to exclude liability for "traditional environmental pollution." The Kent Farms court examined the history of the absolute pollution exclusion, but to do so, the court must have concluded that the exclusion was ambiguous with regard to the facts of that case. Kent Farms, 93 Wash.App. at 420, 969 P.2d 109; Kent Farms, 140 Wash.2d at 401, 998 P.2d 292. An absolute pollution exclusion clause can be ambiguous with regard to the facts of one case but not another. See Queen City Farms, 126 Wash.2d at 81, 882 P.2d 703; see also Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999) ("contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts"). The Kent Farms facts are not present here. Where, as here, the exclusion unambiguously applies to the facts of the case at hand, the plain language must be applied without reference to extrinsic evidence regarding the intent of the parties. See Weyerhaeuser, 142 Wash.2d at 666, 15 P.3d 115.
¶ 33 The insureds also contend that the Kent Farms holding was so sweeping that it overruled Cook and Harbor Insurance. Thus, they argue that Washington's "fumes" cases are inapplicable and the absolute pollution exclusion must now be applied only to cases of traditional environmental pollution. However, it is important to note that while Cook was discussed in the Kent Farms Court of Appeals decision, this court did not mention Cook or Harbor Insurance at all in its Kent Farms opinion. Neither case was explicitly rejected.
¶ 34 Furthermore, the Kent Farms court did not implicitly reject the reasoning of those cases. While the Kent Farms case included language regarding the purpose behind the pollution exclusion, Kent Farms, 140 Wash.2d at 400, 998 P.2d 292, the court was careful to explain that the exclusion applies to "`occurrences' involving the pollutant as a pollutant." Id. at 402, 998 P.2d 292. In other words, the Kent Farms court distinguished between cases in which the substance at issue was polluting at the time of the injury and cases in which the offending substance's toxic character was not central to the injury. This is emphasized by the Kent Farms court's careful description of the injuries at issue in that case:
Gugenberger was not polluted by diesel fuel. It struck him; it engulfed him; it choked him. It did not pollute him. Most importantly, the fuel was not acting as a "pollutant" when it struck him any more than it would have been acting as a "pollutant" if it had been in a barrel that rolled over him, or if it had been lying quietly on the steps waiting to trip him. To adopt Zurich Insurance's interpretation would unjustly broaden the application of the exclusion far beyond its intended purpose.
Kent Farms, 140 Wash.2d at 401, 998 P.2d 292 (emphasis added).
¶ 35 Finally, the insureds argue that the Kent Farms court adopted the reasoning of Gamble Farm, 656 A.2d at 145 and Continental Casualty, 593 N.Y.S.2d 966, 609 N.E.2d at 512, both fumes cases. The insureds contend that the reasoning of those courts should now control fumes cases in Washington. However, both Gamble Farm and Continental involved policy clauses that specifically excluded personal injury or property damage arising out of the discharge of pollutants "`into or upon land, the atmosphere or any water course or body of water.'" Gamble Farm, 656 A.2d at 143 (emphasis *743 omitted) and Continental, 593 N.Y.S.2d 966, 609 N.E.2d at 508 (quoting relevant policy language). Both courts reasoned that the policy reference to "atmosphere" was ambiguous because it could lead a reasonable person to conclude that the exclusion referred only to traditional environmental damages. Gamble Farm, 656 A.2d at 144-45; Continental, 593 N.Y.S.2d 966, 609 N.E.2d at 512-13. However, the policy language in Kent Farms, like the policy language here, did not include the dispositive reference to the atmosphere. See Kent Farms, 93 Wash.App. at 416-17, 969 P.2d 109; CP at 209, 297-98, 308. If anything, the absence of that phrase instead indicates that the exclusionary language is not limited to traditional environmental harms. See Madison Constr. Co., 735 A.2d at 108 ("If the pollution exclusion clause, by its express terms, does not require that a discharge or dispersal be `into the environment' or `into the atmosphere,' then the court is not at liberty to insert such a requirement in order to effect what it considers to be the true or correct meaning of the clause.").
¶ 36 Therefore, we conclude that the Kent Farms discussion of traditional environmental harms is limited by the facts of that case. Here, we adopt the reasoning of the Cook court; TDI meets the policy's definition of a pollutant and Kaczor's injuries fall squarely within the plain language of the pollution exclusion clause. See Cook, 83 Wash.App. at 154, 920 P.2d 1223. Where the exclusion specifically includes releases or discharges occurring on the owner's property or as the result of materials brought onto the property at the behest of the insured, and a reasonable person would recognize the offending substance as a pollutant, the policy is subject to only one reasonable interpretation and the exclusion must not be limited. Id.[10]
¶ 37 In sum, because Cook follows the clear and longstanding rules for insurance contract interpretation adopted by this court, we apply the Cook reasoning in this case. We note that Kent Farms is distinguishable on its facts. See Kent Farms, 140 Wash.2d at 401, 998 P.2d 292. Given Washington's clear rules for insurance contract interpretation, we reject the reasoning of other states that have declined to apply the pollution exclusion in fumes cases. The pollution exclusion at issue here unambiguously precludes coverage for the Kaczor claim and we decline to find ambiguity where none exists. Therefore, we affirm the Court of Appeals holding that the absolute pollution exclusion applies to these facts, distinguishing Kent Farms and adopting the reasoning in Cook.

Illusory Contract
¶ 38 The insureds contend that if the pollution exclusion is interpreted broadly, the exclusion will swallow all covered occurrences, making the policy illusory. See Taylor v. Shigaki, 84 Wash.App. 723, 730, 930 P.2d 340 (1997) (contracts must be construed to avoid rendering contractual obligations illusory). The term "occurrence" is defined in the American States policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CP at 217. The term "occurrence" is defined in the State Farm Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage." CP at 308. The insureds claim that continuous or repeated exposure to general harmful conditions describes just the sort of claims excluded by the pollution exclusion. If the absolute pollution exclusion is so broad that it excludes coverage for all occurrences, then the insurance contract would be illusory because it would render the business liability policy meaningless. See St. John Med. Ctr. v. Dep't of Soc. & Health Serv's, 110 Wash.App. 51, 68, 38 P.3d 383 (2002) ("An illusory contract is unenforceable because there is no consideration."); see also Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 51, 811 *744 P.2d 673 (1991) (holding a broad definition of the word "handled" would render the comprehensive general liability policy illusory); McMahan & Baker, Inc. v. Continental Cas. Co., 68 Wash.App. 573, 578-79, 843 P.2d 1133 (1993).
¶ 39 The Court of Appeals concluded that the exclusion did not apply to all occurrences as defined in the insurance policies. Quadrant, 118 Wash.App. at 534, 76 P.3d 773. For example, the Kent Farms facts exemplified an occurrence that was not excluded by the pollution exclusion. Id. Therefore, the insurance contracts did "afford material coverage despite the apparent conflict in the coverage and exclusion terms." Id. at 535, 76 P.3d 773.
¶ 40 Two of the Court of Appeals judges signed a concurring opinion, which agreed that the majority opinion was technically correct, but "underscore[d] the absurdity of applying the pollution exclusion in the context of [Pacific Restoration's] business." Id. (Grosse, J., concurring). The concurrence opined that the effect of the pollution exclusion would be to "exclude from coverage virtually all claims arising from Pacific Restoration's business activities," and wondered, "what good is business insurance that excludes from coverage activities that go to the heart of the business being insured?" Id. However, rather than interpret the pollution exclusion to create an illusory contract, the concurrence encouraged the legislature to limit the application of absolute pollution exclusions "before their broad reach swallows the coverage businesses purchase them to provide." Id. at 536, 76 P.3d 773. This resolution makes sense because Pacific Restoration, the insured entity to which this argument applies, is not a party to this case. Although the unambiguous language of the absolute pollution exclusion excludes from coverage some claims that would arise out of the work of a typical restoration company, thereby limiting the scope of the business liability policies purchased by such companies, Pacific Restoration has not presented any argument to this court.
¶ 41 We conclude that because the pollution exclusion does not preclude coverage for many accidents that could occur on the building owners' property, the exclusion does not render the insurance contracts illusory. For example, slip and fall injuries would clearly fall outside of the pollution exclusion. Therefore the covered "occurrences" and excluded incidents are not mutually exclusive, and the exclusion does not render the insurance contracts illusory.

Attorney Fees
¶ 42 The insureds request attorney fees pursuant to Olympic Steamship, 117 Wash.2d at 52, 811 P.2d 673. Given the above holding affirming the trial court's summary judgment in favor of the insurers, we deny the request for attorney fees.

III

Conclusion
¶ 43 Washington law clearly requires this court to look first to the plain language of an insurance policy exclusion. If the exclusionary language is unambiguous, then the court cannot create an ambiguity where none exists. If the language is plain there is no need to consider extrinsic evidence of the parties' intent. The language of the absolute pollution exclusion is unambiguous when applied to the facts of this case. The deck sealant at issue here is clearly a pollutant as defined in the policy and Kaczor's injury falls squarely within the exclusionary language. Thus, there is no need to turn to evidence regarding the history and purpose of the standard pollution exclusion. Finally, because there are cases to which the absolute pollution exclusion would not apply, the insurance contract at issue here is not illusory. Therefore, we affirm the Court of Appeals and uphold the trial court's dismissal on summary judgment in favor of the insurers.
ALEXANDER, C.J., MADSEN, OWENS, and FAIRHURST, JJ., concur.
CHAMBERS, J. (dissenting).
¶ 44 The majority embarks upon the noble quest of clarifying the law. Unfortunately, the majority confuses the "occurrence," or coverage triggering event, with the consequent damages. Specifically, the majority *745 confuses a non polluting event covered by the policy with the resulting damages, which were caused by pollutants. Because we look at the occurrence to determine coverage, not the resulting damage, I respectfully dissent.
¶ 45 Our jurisprudence has been consistent in analyzing pollution exclusions. "The relevant inquiry is whether there has been a polluting event." Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 626, 881 P.2d 201 (1994). In my view, the pollution exclusion operates only on polluting events. But if the "occurrence" triggering coverage was not a polluting event, then there is coverage. As we said, "`[i]f the initial event, the "efficient proximate cause," is a covered peril, then there is coverage under the policy regardless whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy.'" Key Tronic, 124 Wash.2d at 625-26, 881 P.2d 201 (quoting Safeco Ins., Co. of Am. v. Hirschmann, 112 Wash.2d 621, 628, 773 P.2d 413 (1989)). This initial event, the efficient proximate cause, should not be confused with the resulting damage.
¶ 46 This is not new. This court has long adopted the "efficient proximate cause" rule for determining whether an event is covered or not.
"Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the `proximate cause' of the entire loss.

"It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events."
Allstate Ins. Co. v. Raynor, 143 Wash.2d 469, 479, 21 P.3d 707 (2001) (emphasis added) (quoting Graham v. Pub. Employees Mut. Ins. Co., 98 Wash.2d 533, 538, 656 P.2d 1077 (1983)).
¶ 47 Consider an auto accident in which a driver was saturated in fuel, and suffered specific injuries from the irritating nature of the chemical compound and its noxious fumes. There would be coverage for this "occurrence" and the resulting damages. In this example, the occurrence is the alleged negligent act which caused the motor vehicle collision. The mere fact that a pollutant was involved in the causal chain of events does not trigger the pollution exclusion. See Kent Farms, Inc. v. Zurich Ins. Co., 140 Wash.2d 396, 402, 998 P.2d 292 (2000). There is coverage so long as "a covered peril sets in motion a causal chain" even when "the last link of which is an uncovered peril." See Key Tronic, 124 Wash.2d at 625, 881 P.2d 201. The covered peril here was the alleged negligence of the contractor and apartment owner in performing routine work necessary to maintain the apartment building.
¶ 48 There are several things upon which the majority and I agree. "Under settled principles of construction, an insurance policy is construed as a whole, with the policy being given `a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Key Tronic, 124 Wash.2d at 627, 881 P.2d 201 (quoting Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994) (quoting Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 95, 776 P.2d 123 (1989))). Thus, first, "we are required to view the exclusion in light of the whole policy to determine whether, in that context, the exclusion applies." Kent Farms, 140 Wash.2d at 400, 998 P.2d 292. Second, "construction of policy language is for the court and undefined terms should be given their plain, ordinary, and popular meaning in accord with the understanding of the average purchaser of insurance." Queen City Farms, 126 Wash.2d at 74, 882 P.2d 703. Third, and related to the second, "`exclusions should be construed strictly against the insurer.'" Kent Farms, 140 Wash.2d at 401-02, 998 P.2d 292 (quoting Queen City Farms, 126 Wash.2d at 74, 78, 882 P.2d 703). These are not rules of construction to be applied only when the court finds an ambiguity but fundamental to the court's task of interpreting and determining the intent of the parties.
¶ 49 Turning then to the first principle, the policies at issue are commercial comprehensive *746 general liability policies. For our purposes, the apartment owners are insured under both policies. Because these are broad and comprehensive policies we must not only interpret them as would an average person purchasing insurance but we must also strictly construe any exclusions against the insurers. Queen City Farms, 126 Wash.2d at 74, 882 P.2d 703 (citing Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wash.2d 65, 68, 659 P.2d 509 (1983), modified on reconsideration, 101 Wash.2d 830, 683 P.2d 186 (1984)).
¶ 50 Here, coverage is broad. The Americans States' policy says, "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." Clerk's Papers (CP) at 208 (American State's Policy); cf. CP at 296 (State Farm Policy). As any exclusion must be read within the context of the coverage provided, we must first examine the definitions of "occurrence" within the policies. Both policies have the identical definition of occurrence: "`Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CP at 217; cf. CP at 308. Thus, the insured is led to understand that his insurance coverage extends to the continuous or repeated exposure to harmful conditions.
¶ 51 Next we must examine the pollutions exclusion. The policies in question are very similar to the policies we have dealt with before. This insurance does not apply to:
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured;
....
....
(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.
CP at 209-09 (American States); accord CP at 297-98 (State Farm)
¶ 52 Pollutant is broadly defined as any "irritant ... or contaminant" in solid, liquid, gaseous or thermal form. CP at 209 (American States); accord (308 State Farm).[1]
¶ 53 Here, a contractor was hired by the insured to apply waterproofing to the exterior wood surface of the apartment complex. The specific allegation of negligence against the apartment owner was the failure to prevent exposure to toxic fumes and the failure to warn its tenant. Inherent in applying any water proofing material including stains and paints is the exposure of toxic fumes. But the specific contentions against the apartment owner was the failure to assure proper ventilation or to warn of the fumes.
¶ 54 The question before this court is whether the average purchaser of a comprehensive liability policy understand that the act or applying waterproofing to the exterior wall of an apartment building would be an act of "discharge, dispersal, seepage, migration, (or) release" of a pollutant. See Kent Farms, 140 Wash.2d at 398, 998 P.2d 292 (policy terms are given the sensible interpretation that an average person purchasing insurance would give them.); Key Tronic, 124 Wash.2d at 627, 881 P.2d 201.
¶ 55 This court has never held that mere injury by a pollutant triggers a pollution exclusion. This court has always examined the pollution exclusion by determining whether the "occurrence" was a polluting event. A polluting event is the discharge, dispersal, seepage, migration, release or escape of pollutants. This court, when addressing this question within the plain, ordinary, and popular meaning in accord with the *747 understanding of the average purchaser of insurance has adopted the traditional meaning of pollution. Kent Farms, 140 Wash.2d at 400-01, 998 P.2d 292 (considering an absolute pollution exclusion); Queen City, 126 Wash.2d at 84-85, 882 P.2d 703 (considering qualified and absolute pollution exclusions). This court has also always viewed pollution exclusions from their traditional purpose of avoiding massive exposure for environmental damage. See Kent Farms, 140 Wash.2d at 400-01, 998 P.2d 292; Queen City Farms, 126 Wash.2d at 84-85, 882 P.2d 703. This history is an integral part of a proper understanding of the clauses.
¶ 56 An excellent summation is found in Kent Farms:
The qualified pollution exclusion clause, a precursor to the clause at issue here, came into existence so insurers could avoid the "yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment." Later, various forms of absolute pollution exclusion clauses, including the clause here, were incorporated into insurance policies in the wake of expanded environmental liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 (1995) (CERCLA). These clauses were clearly intended to exculpate insurance companies from liability for massive environmental cleanups required by CERCLA and similar legislation. The insurance companies' objective in creating both clauses was to avoid liability for environmental pollution. To read the absolute exclusion clause more broadly ignores the general coverage provisions.
Kent Farms, 140 Wash.2d at 400-01, 998 P.2d 292 (quoting Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 698, 340 S.E.2d 374 (1986)) & citing Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 64 Wash.App. 838, 873-84, 827 P.2d 1024 (1992) (surveying the history of the clause); see also generally Jeffrey W. Stempel, Reason and Pollution: Correctly Construing the "Absolute" Exclusion in Context and in Accord with its Purpose and Party Expectations, 34 TORT & INS. L.J. 1, 5 (1998).
¶ 57 The majority recognizes that it is dramatically departing from prior interpretation of pollution exclusions, but seems to justify departing from precedents by distinguishing the policy provisions before us as "absolute pollutions exclusions" to be distinguished from "qualified" exclusions, and by pointing to substantially irrelevant factual differences. Majority at 9 (absolute pollution exclusion), 12-16 (differences from Kent Farms). The majority acknowledges that pollution exclusions originated from insurers' efforts to avoid sweeping liability for long-term release of hazardous waste. Majority at 9. The majority then concludes that the exclusions before us are absolute, not qualified, and for that reason our former jurisprudence holding that pollution exclusions are interpreted in light of their purpose of avoiding massive exposure of environmental damage should no longer apply. But in Kent Farms, the exclusion at issue was also an absolute pollution exclusion. Kent Farms, 140 Wash.2d at 398-99, 998 P.2d 292.[2]
¶ 58 The majority distinguishes Kent Farms on the grounds that Kent Farms did not explicitly recite that it found the clause ambiguous. Therefore, it concludes, Kent Farms discussion of the history of the clause was, apparently, not binding on future courts. But read as a whole, it is clear the court believed that the clause was ambiguous, at least as applied to the facts of Kent Farms, as it referred approvingly to the Court of Appeals holding that the clause was ambiguous and proceeded to review the drafting history of the clause. Kent Farms, 140 Wash.2d at 398, 400-402, 998 P.2d 292.
*748 ¶ 59 Against that backdrop, it is clear that applying the clause to exclude this type of harm is appropriate only if the "occurrence" that triggers coverage is a polluting event. In my view, the average consumer of a general liability policy would not understand that applying wood preservative to the exterior of an apartment building was a polluting event. Key Tronic Corp., 124 Wash.2d at 626, 881 P.2d 201. As this court has already noted, expanding the exclusion to cover any type of occurrence that involves pollution would be an "opportunistic afterthought," outside the intent of the drafters. Kent Farms, 140 Wash.2d at 402, 998 P.2d 292 (citing Gamble Farm Inn, Inc. v. Selective Ins. Co., 440 Pa.Super. 501, 508, 656 A.2d 142 (1995)). I conclude this does violence to the meaning of the exclusion and our recent unanimous Kent Farms opinion. Accordingly, I respectfully dissent.
C. JOHNSON and SANDERS, JJ., and IRELAND, J., Pro tem., concur.
NOTES
[1] Quadrant Corporation and Wellsford Holly Residential Properties, Inc. were general partners of Roy Street Associates. Equity Residential Properties Trust is the successor in interest to Wellsford Holly. Collectively, the building owners are the insureds.
[2] The State Farm policy excludes "any: a. bodily injury, property damage, personal injury or advertising injury," that arises out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants, but otherwise the language of the pollution exclusion is identical in all relevant respects to the American States Insurance Co. exclusion. CP at 297-98, 308.
[3] The insurers declare that the duty to defend is not at issue here and the insureds have not challenged that conclusion.
[4] A concurring opinion noted that the pollution exclusion would exclude from coverage virtually all claims arising from Pacific Restoration's business activities. Quadrant, 118 Wash.App. at 535, 76 P.3d 773 (Grosse, J., concurring). Therefore, the concurrence encouraged the legislature to limit pollution exclusions "before their broad reach swallows the coverage businesses purchase them to provide." Id. at 536, 76 P.3d 773 (Grosse, J., concurring). This point is discussed infra at pages 743-44.
[5] The insurers claim that the policy language in Kent Farms was more general than the language at issue in this case. However, this court's opinion in Kent Farms quoted only part of the policy language. The more extensive quotation of policy language in the Court of Appeals opinion reveals that it is identical in all relevant respects to the policy language in this case. Kent Farms, Inc. v. Zurich Ins. Co., 93 Wash.App. 414, 416-17, 969 P.2d 109 (1998).
[6] It is important to note, however, that the Queen City Farms court did so only after finding its policy language to be ambiguous. Queen City Farms, 126 Wash.2d at 82-83, 882 P.2d 703.
[7] While the insureds distinguish United National Insurance on its facts, that case is helpful in its analysis of whether Cook and Harbor Insurance are still good law in Washington after Kent Farms. United Nat'l Ins., 190 F.Supp.2d at 1218.
[8] The State Farm policy also refers specifically to personal injury. CP at 297.
[9] Following a rather convoluted analysis, the dissent ultimately concludes that the application of the deck sealant in this case was not a polluting event sufficient to trigger the absolute pollution exclusion clauses. Dissent at 9. The dissent also asserts that an average purchaser of a general liability policy would not understand that the pollution exclusion would apply in these circumstances. But this analysis ignores the plain language of the pollution exclusions, which apply to "`[b]odily injury' or `property damage' arising out of the actual ... dispersal, seepage, migration, release or escape of pollutants" including "fumes," at or from the premises owned by the insured. CP at 209; see also CP at 297-98.
[10] The insureds argue that this rule could lead to absurd results in some cases. While we note that the policy language is unambiguous in the context of this case, that is not to say that the language would not be ambiguous in the context of another case involving very different factual circumstances. See Queen City Farms, 126 Wash.2d at 81, 882 P.2d 703; see also Madison Constr. Co., 735 A.2d at 106 ("contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts").
[1] In full, pollutant is defined as "any solid, liquid, gaseous or thermal irritant or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." CP at 209, 308.
[2] The Kent Farms exclusion said in relevant part:

This insurance does not apply to:
....
c. (1) "Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
....
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.