**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALASKA VILLAGE ELECTRIC COOPERATIVE, INC., an Alaska corporation, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; et al., <br><br> Defendants - Appellees. | No. 12-35920 <br><br> D.C. No. 2:11-cv-01375-RAJ <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted November 4, 2013
Seattle, Washington

Before: SCHROEDER, PAEZ, and BERZON, Circuit Judges.

Alaska Village Electric Cooperative ("AVEC") appeals the district court's

grant of summary judgment in favor of Zurich American Insurance Company and

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

other underwriters ("Zurich"), rejecting AVEC's claim that an all-risks insurance policy issued by Zurich covered the cost to repair a shipbuilder's faulty welding during construction of new barges. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

Under Washington law, if an insurance policy clause is ambiguous, courts look to "extrinsic evidence of the intent of the parties to resolve the ambiguity." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). Such extrinsic evidence serves the purpose of "elucidating the meaning of the words employed," but should not be used to "import[] into a writing an intention not expressed therein." *Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990) (internal citations and quotations omitted). Further, where the parties have actually negotiated for specific terms, Washington law requires that courts consider extrinsic evidence to determine the policy's meaning. *See Spratt v. Crusader Ins. Co.,* 37 P.3d 1269, 1272 (Wash. Ct. App. 2002).

The plain meaning of the relevant policy provision—"[t]his Policy [i]nsures against all risks of physical loss of or damage to the Vessel occurring during the currency of this Policy . . ."—does not make clear whether the policy covers the repair of faulty workmanship itself or only losses due to accidents that occur as a consequence of such faulty workmanship. Although the Washington Court of

Appeals ruled in one instance that the same all-risks policy language did not cover faulty workmanship, that ruling was specific to the case and facts before the court. *See Wolstein v. Yorkshire Ins. Co.*, 985 P.2d 400 (Wash. Ct. App. 1999). Here, AVEC presented evidence that, when viewed in a light most favorable to it, demonstrates that it specifically negotiated for coverage of faulty workmanship.

*Wolstein* relied principally upon the Fifth Circuit's opinion in *Trinity Industries, Inc. v. Insurance Company of North America*, 916 F.2d 267 (5th Cir. 1990). There, the court ruled that virtually identical all-risks language did not cover faulty workmanship only after engaging in an analysis of the intent of the parties and the "circumstances surrounding the policy." 916 F.2d at 269-71. Neither *Wolstein* nor *Trinity* dictate that the all-risks policy language at issue here can have only one meaning. In fact, another Washington appellate court has explained that "all risk builder's risk policies vary considerably," and that "not every all risk builder's risk policy contains a 'faulty workmanship' exclusion." *Frank Coluccio Constr. Co., Inc. v. King Cnty.*, 150 P.3d 1147, 1159 (Wash. Ct. App. 2007). We must therefore look to the available extrinsic evidence to determine if there is a genuine issue of material fact as to whether the all-risks policy in this case covers the faulty welding at issue.

Viewing the extrinsic evidence and surrounding circumstances in a light most favorable to AVEC, *see Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013), there is a genuine factual dispute as to the parties' intent and, ultimately, the meaning of the all-risks policy. The circumstances surrounding the genesis of the policy can be understood to indicate that AVEC's agents sought coverage that specifically included faulty workmanship, and that the insurers so understood.

For example, AVEC's agents demanded that insurers underwrite the policy without "Addendum No. 2." Addendum No. 2 provides in relevant part, "[u]nderwriters shall not pay for any loss, damage, or expense caused by or arising in consequence of (a) faulty workmanship, or the installation or use of improper or defective materials, unless resulting in destruction, deformation, breaking, tearing, bursting, holing, or cracking of the Vessel, or any other like condition . . . ." This language makes explicit that faulty workmanship is excluded from coverage, but not most consequential damages due to faulty workmanship, indicating that the concern in excluding Addendum No. 2 was faulty workmanship coverage. Further, there is evidence indicating that the norm in the marine insurance industry is that all-risks policies, particularly without Addendum No. 2, cover faulty workmanship. This industry norm appears to be rooted in the history of Addendum No. 2, which,

AVEC contends, was added to the standard 1979 American Institute Builders Risk Clauses in 1981 for the purpose of excluding coverage for faulty workmanship. In light of this history and industry norm, it could be reasonably inferred that insurers would have understood that, because AVEC's agents sought a policy without Addendum No. 2, they desired coverage for faulty workmanship. In addition, there is some evidence in the record that AVEC's agents specifically told insurers that they were demanding a policy without the Addendum No. 2 exclusion so that the policy would cover faulty workmanship.

These facts, viewed in AVEC's favor, create a genuine issue of material fact as to the meaning of the all-risks policy in this case. We therefore reverse and remand for further proceedings.

**REVERSED and REMANDED.**